566 So.2d 508 (1990)
Paul G. LANE, et al., Petitioners,
v.
Thomas A. HEAD, et al., Respondents.
No. 74183.
Supreme Court of Florida.
June 28, 1990.
Rehearing Denied October 2, 1990.
*509 Bruce Zeidel of Gorman & Zeidel, P.A., North Palm Beach, for petitioners.
Karen A. Gagliano and Jeff M. Brown of Lavalle, Wochna, Raymond & Rutherford, P.A., Boca Raton, for respondents.
Gary Gerrard of Haddad, Josephs & Jack, Coral Gables, amicus curiae for Academy of Florida Trial Lawyers.
KOGAN, Justice.
We have for review Head v. Lane, 541 So.2d 672 (Fla. 4th DCA 1989), based on express and direct conflict with First State Insurance Co. v. General Electric Credit, Auto Lease, Inc., 518 So.2d 927 (Fla. 3d DCA 1987). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. This case asks us to decide whether a trial court should apply the "lodestar" formula, see Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985), to enhance customary attorney's fees when the client and attorney have agreed to make those fees only partially contingent on the outcome of the case.
In the proceedings that gave rise to this controversy, Paul G. Lane filed a derivative suit on behalf of Pine Creek Development Corporation, in which he was a twenty-five percent shareholder. Defendants were all of the other shareholders. The suit claimed that the majority shareholders had usurped a corporate opportunity involving the purchase of real property. In connection with this action, Lane had agreed to pay his attorney costs plus the greater of $100.00 an hour or twenty-five percent of the amount actually recovered. Undisputed testimony below established that the attorney's customary reasonable fee in cases of this type was $150.00 per hour. This agreement thus constituted a "partial" contingency-fee arrangement,[1] because the attorney would have received only two-thirds his usual fee had Lane lost the case.
Ultimately Lane obtained a judgment on behalf of the corporation totaling $604,800.00. His attorney then asked the court to tax reasonable attorneys' fees against the losing parties, as provided in section 607.147(5), Florida Statutes (1985).[2]
The trial court found that Lane's attorney had expended 278 hours in prosecuting the case and that the attorney's reasonable fee was $150.00 per hour, for a total of $41,700.00. Neither party disputed these figures. The trial court concluded that Lane had only a fifty percent chance of prevailing at the outset of the suit; and it then applied a "multiplier" of two, thereby arriving at a total fee award of $83,400.00 to be taxed against the majority shareholders.[3] The multiplier was based on our decision in Rowe, 472 So.2d at 1151, which had established that a multiplier of two was permissible in a case involving a full contingency arrangement when the party's chances of prevailing were only one in two.
On appeal, the Fourth District held that the use of any multiplier was inappropriate *510 in cases of a partial contingency-fee arrangement. However, the district court acknowledged the contrary holding of the Third District in First State Insurance, 518 So.2d at 928, which had found that a partial contingency-fee arrangement still required the use of a reduced multiplier.
Initially, we reject the contention of respondents that no attorneys' fees should have been awarded in this instance. Respondents rely on the final sentence of section 607.147(5), Florida Statutes (1985), which states:
This subsection [authorizing award of attorney's fees] shall not apply to any judgment rendered for the benefit of injured shareholders only and limited to a recovery of the loss or damage sustained by them.

(Emphasis added.) Respondent argues that the present judgment benefited only Lane and resulted only in a recovery of "losses" incurred by him.
We cannot accept this narrow reading of the statute. The loss in this instance was not personal to Lane, but inhered in the corporation itself. As an individual, he had suffered no "loss or damage." Rather, the improper actions of the majority shareholders had resulted in the loss of an opportunity available to the corporation as a whole. The limitation provided by the last sentence of section 607.147(5) clearly was meant to apply only in those situations in which a judgment is rendered to vindicate the personal rights of shareholders. We believe that if the right vindicated by the suit inheres primarily in the corporation and not shareholders as individuals, then attorneys fees are within the discretion of the trial court. Accordingly, respondents' claim is without merit in this instance.
We now turn to the application of our decision in Rowe to the facts of this case. At the outset, we note that we recently have modified the lodestar formula developed in Rowe. Standard Guaranty Ins. Co. v. Quanstrom, 555 So.2d 828 (Fla. 1990). Accord State Farm Fire & Casualty Co. v. Palma, 555 So.2d 836 (Fla. 1990); Bankers Life Ins. Co. v. Owens, 554 So.2d 1165 (Fla. 1990). However, this modification expressly does not apply to those cases in which the trial court had set attorneys' fees prior to the date of the release of the Quanstrom opinion. Quanstrom, 555 So.2d at 834. Thus, the present case must be analyzed under Rowe as it existed prior to Quanstrom.[4] This is true even though this case must be remanded for further proceedings.
We agree with Lane's argument that, under this analysis, the trial court had discretion to apply a multiplier in this instance. The district court's ruling to the contrary therefore will be quashed. One of the purposes of Rowe was to encourage attorneys to take cases under contingency-fee arrangements, thereby making legal services more widely available to those who otherwise could not afford them. As is obvious, some contingency-fee cases will result in a financial loss to the lawyers who handle them. Accordingly, Rowe recognized that attorneys taking contingency-fee cases are entitled to a higher than usual reimbursement in successful contingency-fee cases, which would offset their other losses. The result was the endorsement of the use of a multiplier of no less than one and a half and no more than three,[5] depending on the likelihood of success at the outset of the suit. Rowe, 472 So.2d at 1151.
We believe that a multiplier also is within the trial court's discretion in those *511 instances in which the contingency-fee arrangement is only partial. Accord First State Insurance, 518 So.2d at 928. Attorneys should be encouraged to take cases based on a partial contingency-fee arrangement, since this policy also will encourage attorneys to provide services to persons who otherwise could not afford the customary legal fee. No incentive would exist under the approach taken by the district court below, because no "enhancement" of the customary fee would be given to offset losses.
We agree, however, with the Third District in First State Insurance that attorneys taking partially contingent cases are not entitled to the same enhancement of the customary reasonable fee that would have been available if the fee arrangement had been fully contingent. The policy underlying Rowe does not authorize a windfall for lawyers.
Rather, we believe that when a fee arrangement is partially contingent, the court still has discretion to apply the appropriate multipliers mandated either by Rowe or Quanstrom, whichever is applicable. However, the enhancement over and above the customary reasonable fee then should be reduced; and this reduction should be roughly equal to the percentage of the attorney's customary reasonable fee that was guaranteed by the fee arrangement. Thus, if the contingency-fee arrangement guaranteed the attorney two-thirds of his or her customary reasonable fee, then the amount of additional compensation computed using the multipliers should be reduced by two-thirds.[6] These computations, however, are subject to all the other conditions of Rowe or, when applicable, Quanstrom.
In the present case, Lane's attorney customarily and reasonably received $150.00 per hour. He expended 278 hours in prosecuting Lane's case, and thus would usually have been entitled to $41,700.00 in fees. Based on the finding that Lane had only a one in two chance of prevailing, the trial court had discretion to multiply this "lodestar" figure by a factor of approximately two, in effect giving Lane's attorney an enhancement of an additional $150.00 per hour. Rowe, 472 So.2d at 1151. Up to this point, the trial court did not err.
However, the trial court abused its discretion by not then reducing the enhancement to correspond to the risk Lane's attorney actually took in this instance. Here, the partial contingency fee arrangement guaranteed the attorney $100.00 per hour, or two-thirds of his customary reasonable fee.[7] Accordingly, the additional $150.00 per hour awarded to Lane's attorney as an enhancement should have been reduced by a factor of two-thirds, which would produce a figure of $50.00 per hour. Under this computation, the trial court had presumptive discretion to award an overall fee of $150.00 per hour (the customary reasonable fee) plus $50.00 per hour (the enhancement for a partial contingency-fee arrangement in which the attorney risks losing only one-third of his customary reasonable fee). The total amount thus should have been $200.00 per hour, for a total fee of $55,600.00.
Because of the facts of this case, an additional reduction also was required. The arrangement between Lane and his attorneys specified that the fee would be costs plus the greater of $100.00 per hour or twenty-five percent of the recovery. As we stated in Rowe, in no event may a court *512 tax attorney's fees that exceed the actual fee agreement between the plaintiff and plaintiff's counsel. Rowe, 472 So.2d at 1151. This principle applies even though the present fee arrangement was made prior to Rowe. Miami Children's Hosp. v. Tamayo, 529 So.2d 667, 668 (Fla. 1988). Thus, in this instance the fee award was subject to a cap equal to the maximum amount Lane would have had to pay if section 607.147(5), Florida Statutes, had not existed. Under Lane's fee agreement, this cap was twenty-five percent of the recovery plus expenses.
The proceedings below, however, reflect confusion over exactly what amount constituted the "recovery" in this instance. Obviously, the total judgment was $604,800.00. However, as a twenty-five percent shareholder of the corporation, Lane was entitled to receive only twenty-five percent of the judgment  or $151,200.00. The remaining $453,600.00 was "owed" by the majority shareholders (as defendants) to themselves (as part owners of the "plaintiff" corporation). We thus believe it is the sheerest fiction to say that Lane's attorney "recovered" anything more than $151,200.00 for Lane.
The fact that the action was derivative, based on rights inhering in the corporation and not Lane, in no sense alters this conclusion. The contract for legal services was created by Lane, and it was to Lane that the attorney owed a duty of obtaining a recovery. Thus, the amount of the "recovery" must be gauged from Lane's perspective, not from that of the fictitious corporation in which Lane held a minority interest.
Accordingly, the amount of fees awarded against the defendants should have been further reduced to equal the maximum amount of fees Lane would have owed if attorney's fees had not been available  twenty-five percent of Lane's recovery of $151,200.00. This amount is $37,800.00.[8]
For the reasons above, we quash the opinion below and remand this case for further proceedings consistent with the views expressed here. We do not address any other issues raised by the parties.
It is so ordered.
EHRLICH, C.J., and SHAW and BARKETT, JJ., concur.
OVERTON, J., concurs specially with an opinion.
GRIMES, J., concurs with an opinion, in which McDONALD, J., concurs.
McDONALD, J., concurs in result only.
OVERTON, Justice, specially concurring.
While I concur, I believe that trial judges will find their task of calculating attorney's fees more difficult as a result of this opinion. I write to emphasize two points.
First, establishing the amount of the lodestar fee is a critical step in the process. In this regard, the trial judge initially must "determine the number of hours reasonably expended on the litigation." Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145, 1150 (Fla. 1985). Here, the trial judge must carefully determine "the time that reasonably should be devoted to accomplish a particular task." Florida Bar v. Richardson, No. 73,214, slip op. at 8 (Fla. Apr. 19, 1990). All of the time a lawyer spends on a particular case may not be reasonable. Next, the trial court must "determine a reasonable hourly rate for the services of the prevailing party's attorney." Rowe, 472 So.2d at 1150. This reasonable rate is based on "the rate charged in that community by lawyers of reasonably comparable skill, experience and reputation, for similar services," id. at 1151, not the hourly rate ordinarily charged by the specific attorney retained in the case. In summary, there are two basic determinations that trial judges must make in arriving at the lodestar amount: (a) the number of hours reasonably expended and (b) the reasonable hourly rate charged in that community.
*513 My second point concerns the use of a contingency multiplier to enhance the lodestar fee. In establishing the three categories of attorney's fees in Standard Guaranty Insurance Co. v. Quanstrom, 555 So.2d 828 (Fla. 1990), we rejected the general use of a contingency multiplier in categories I and III, yet approved a contingency multiplier for the prevailing party in category II, which deals with contract and tort cases. We declined to permit the multiplier's use in category I, which concerns public interest cases, except in the limited circumstances allowed under the principles enunciated by the United States Supreme Court in Blanchard v. Bergeron, 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989), and Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987). I note that the use of a multiplier in this category is severely restricted and that "`no enhancement for risk is appropriate unless the applicant can establish that without an adjustment for risk the prevailing party "would have faced substantial difficulties in finding counsel in the local or other relevant market."'" Quanstrom, 555 So.2d at 832 (quoting Delaware Valley, 483 U.S. at 733, 107 S.Ct. at 3090 (citation omitted)). With regard to category III, we rejected the use of a contingency multiplier because either the risk of nonpayment was not present or the use of a contingency fee was prohibited.
In this case, the majority opinion expands the use of a contingency multiplier in category II cases to allow compensation for the risk of not being paid in full for the services provided. Here, trial judges must recognize that counsel would receive some payment even if counsel failed to prevail and balance that with the need to use a multiplier to arrive at a reasonable fee. Clearly, the use of the multiplier in this instance is not the same as where there is a total risk of nonpayment. Clearly, this new use of a contingency multiplier will make the trial judges' task more difficult.
GRIMES, Justice, concurring.
The justification for a contingency fee multiplier is that without providing an added incentive for lawyers to obtain higher fees, clients with legitimate causes of action (or defenses) may not be able to obtain legal services. Thus, in Standard Guaranty Insurance Co. v. Quanstrom, 555 So.2d 828 (Fla. 1990), we explained that in ordinary tort and contract cases the court should only use a contingency multiplier when there is evidence that the relevant market required it in order to obtain competent counsel. I write only to suggest that a contingency fee multiplier ought not to be necessary in most cases involving a partial contingency fee because by obtaining the client's agreement to pay a portion of the fee regardless of the outcome of the case, the lawyer is able to hedge against the possibility of losing.
McDONALD, J., concurs.
NOTES
[1] We use the term "partial contingency-fee arrangement" to mean those instances in which an attorney is guaranteed a fee that is less than his or her customary reasonable fee if the client loses, but the opportunity for an enhanced fee if the client prevails. A "full contingency-fee arrangement" means those instances in which the attorney's fee is fully contingent upon the client prevailing.
[2] The statute provided:

If the action on behalf of the corporation is successful, in whole or in part, or if anything is received by the plaintiff or plaintiffs as the result of a judgment, compromise, or settlement, the court may award the plaintiff or plaintiffs the reasonable expenses of maintaining the action, including reasonable attorneys' fees, and direct him or them to account to the corporation for the remainder of the proceeds so received by him or them. This subsection shall not apply to any judgment rendered for the benefit of injured shareholders only and limited to a recovery of the loss or damage sustained by them.
§ 607.147(5), Fla. Stat. (1985) (emphasis added).
[3] Initially, the trial court had then reduced the total award to $37,500.00, an amount equal to 25% of $151,000.00. This latter figure constituted 25% of the total recovery, the amount due to Lane as a 25% shareholder in the corporation. Subsequently, the trial court reversed itself based on a Third District holding that Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985), could not be applied retroactively. Tamayo ex rel. Tamayo v. Miami Children's Hosp., 511 So.2d 1091 (Fla. 3d DCA 1987), quashed, 529 So.2d 667 (Fla. 1988).
[4] Even if Quanstrom applied, however, we would conclude that the case below involved a matter properly the subject of the lodestar formula. A shareholder's derivative suit of the type prosecuted below falls within the second category of cases analyzed by Quanstrom  those involving principally tort and contract cases. Usurpation of a corporate opportunity essentially is a tort concept, not "category 1" public policy enforcement or those matters falling within Quanstrom's category 3 (family law, eminent domain and estate and trust proceedings). See Standard Guaranty Ins. Co. v. Quanstrom, 555 So.2d 828, 834-35 (Fla. 1990).
[5] This range of multipliers has been reduced in Quanstrom, 555 So.2d at 834. In addition, Quanstrom has modified the overall method of analyzing cases of this type. See id. at 830-35. Accord State Farm Fire & Casualty Co. v. Palma, 555 So.2d 836 (Fla. 1990).
[6] We acknowledge that the changes in the lodestar formula made by Quanstrom have substantially altered the way attorneys' fees of this type will be computed in the future. However, in dealing with partial contingency-fee arrangements, the basic policies underlying the present opinion are equally applicable whether the computation is made using the multipliers set forth in Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985), or the modifications required by Quanstrom. Whenever Quanstrom authorizes the use of a multiplier for full contingency-fee arrangements, the same multiplier may be used in cases involving partial contingency-fee arrangements, provided the trial court then reduces the enhancement as required by this opinion.
[7] For purposes of these computations, it is irrelevant whether or not Lane had the ability to pay the $100.00 per hour fee. The risk of an insolvent or unreliable client is one of the costs of doing business and should not be considered a "contingency" under this formulation.
[8] On remand, the trial court also may award "reasonable expenses." § 607.147(5), Fla. Stat. (1985). Lane, of course, must be reimbursed for any amounts previously paid to his attorney that are covered by the award of fees and expenses.