734 So.2d 403 (1999)
William BELL, et al., Petitioners,
v.
U.S.B. ACQUISITION COMPANY, INC., etc., et al., Respondents.
U.S.B. Acquisition Company, Inc., etc., et al., Petitioners,
v.
Allen G. Stamm, et al., Respondents.
Nos. 90,321, 90,426.
Supreme Court of Florida.
May 20, 1999.
*404 Basil E. Dalack, West Palm Beach, Florida, for Petitioners.
Marshall J. Osofsky and Gary M. Dunkel of Lewis, Vegosen, Rosenbach & Silber, P.A., West Palm Beach, Florida, for Respondents.
PARIENTE, J.
We have for review U.S.B. Acquisition Co. v. Stamm, 695 So.2d 373, 376 (Fla. 4th *405 DCA 1997), wherein the district court certified the following question:
IS A CONTINGENCY RISK MULTIPLIER INAPPLICABLE TO A COURT AWARDED ATTORNEY'S FEE WHERE THE ONLY AUTHORITY FOR FEES IS PREDICATED ON A CONTRACTUAL PROVISION AND NOT A STATUTE?
We have jurisdiction.[1]See art. V, § (b)(4), Fla. Const. We answer the certified question in the negative and quash Stamm on this issue.

BACKGROUND
This case arises from a lawsuit between U.S.B. Acquisition Company, Inc. (U.S.B), the buyer of a concrete manufacturing business, and sellers Allen G. Stamm, William Bell and Thomas Lagano (collectively referred to as "sellers"). U.S.B. claimed damages based on breach of contract and various tort theories, and the sellers sued for the balance of the purchase price owed pursuant to promissory notes. Both parties received verdicts on their individual claims, but the trial court reduced U.S.B.'s verdict in response to a posttrial motion.
In the initial appeal, the Fourth District Court of Appeal affirmed the postjudgment reduction of U.S.B.'s verdict. See U.S.B. Acquisition Co. v. Stamm, 660 So.2d 1075 (Fla. 4th DCA 1995), review denied, 670 So.2d 941 (Fla.1996). In the same appeal, both parties challenged the denial of their respective motions for attorney's fees. The Fourth District found that the trial court properly denied U.S.B.'s attorney's fees, but concluded that the sellers' claims for both trial and appellate counsel fees should have been awarded because their claim for fees was based on a contractual provision of the promissory note that provided for "a reasonable attorney's fee." See id. at 1081. The Fourth District reversed and remanded with directions for the trial court to determine the amount of the fee award. See id.
On remand, the trial court found that the sellers' trial and appellate attorneys met the criteria for a contingency risk multiplier, but that it could not consider the application of a multiplier because of the Fourth District's subsequent decision in Command Credit Corp. v. Mineo, 664 So.2d 1123 (Fla. 4th DCA 1995). In Command Credit, the Fourth District concluded, after reviewing prior decisions of this Court, that "a contingency multiplier is not applicable where the only authority for a fee award is based on a contractual provision and not a statute." Id. at 1125-26. The sellers filed a motion pursuant to Florida Rule of Appellate Procedure 9.400(c) to review the trial court's order refusing to consider the application of a multiplier in the award of appellate attorney's fees.[2] The Fourth District affirmed, but again certified the above question to this Court, as it had previously in Command Credit. See Stamm, 695 So.2d at 376; Command Credit, 664 So.2d at 1126.
Petitioner argued in this Court that the basis for the court-awarded fee is irrelevant to whether a contingency risk multiplier is applicable because the primary purpose of a contingency risk multiplier is to ensure that all individuals receive competent representation to pursue legitimate causes of actions or maintain legitimate defenses, regardless of their economic status. In response, U.S.B. argued that applying a multiplier in a contract case, where the only basis for the fees is the *406 prevailing party provision in the contract, would violate both our precedent and public policy. U.S.B. further claimed that where a contract is silent on the issue of a multiplier, allowing a court to consider a multiplier results in the court rewriting the parties' contract. However, as discussed more fully below, we conclude that where the contract provides for court-awarded reasonable attorney's fees to the prevailing party, neither our precedent nor public policy precludes trial courts from considering a multiplier, so long as the evidence supports the need.[3]

ANALYSIS OF PRECEDENT
We begin our analysis by examining our precedent concerning the guidelines for calculating court-awarded attorney fees. In Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145, 1150-51 (Fla.1985), we first enunciated the factors to be utilized by a court in assessing "reasonable attorney fees." We noted the distinction between the "English Rule," that attorney fees are taxed to the losing party as part of costs, and the "`American Rule,' that attorney fees may be awarded by a court only when authorized by statute or agreement of the parties." Id. at 1148.[4] We observed that "great concern ha[d] been focused on a perceived lack of objectivity and uniformity in court-determined reasonable attorney fees." Id. at 1149.
Noting that it was "incumbent upon this Court to articulate specific guidelines to aid trial judges in the setting of attorney fees," we considered the federal lodestar approach to be a "suitable foundation for an objective structure" upon which to base an award. Id. at 1150. We did not differentiate between court-awarded fees authorized by statute and court-awarded fees authorized by the agreement of the parties.
We defined an objective structure in Rowe. In calculating "reasonable fees," the trial court must determine the number of hours reasonably expended by the attorney and a reasonable hourly rate for those services, then multiply the two to arrive at the "lodestar" amount. Id. at 1150-51. The Rowe opinion further explained that the criteria set forth in Disciplinary Rule 2-106(b) of the Florida Bar Code of Professional Responsibility should be utilized to calculate the loadstar.[5] 472 So.2d at *407 1150. For example, we stated that "the novelty and difficulty of the question involved" should be considered in determining the number of hours reasonably expended on the litigation. Id. As to the second half of the lodestar equationthe hourly ratewe stated that the court should take into account all of the factors enumerated in the Florida Bar Code of Professional Responsibility "except the `time and labor required,' the `novelty and difficulty of the question involved,' the `results obtained,' and `[w]hether the fee is fixed or contingent.'" Id. at 1150-51.
We instructed that after calculating the lodestar, the court "may add or subtract from the fee based upon a `contingency risk' factor and the `results obtained.'" Id. at 1151. Thus, although the court is precluded from considering the contingent nature of the fee when determining a reasonable hourly rate, this factor should be taken into account when determining whether a multiplier is appropriate. In Rowe, we recognized the economic reality that attorneys who work on a contingent fee basis only receive compensation when they prevail, and thus must charge a higher fee than if they had been guaranteed an hourly rate. 472 So.2d at 1151.
While Rowe emanated from a statutory prevailing party attorney's fee provision, we did not limit our analysis to statutorily based attorney's fees. Our overriding concern was in setting forth a detailed formula to provide the trial judges "with objective guidance in the awarding of reasonable attorney fees and allow parties an opportunity for meaningful appellate review." Id. at 1152.
In Standard Guaranty Insurance Co. v. Quanstrom, 555 So.2d 828, 830 (Fla.1990), we found it necessary to reexamine the principles adopted in Rowe regarding the federal lodestar approach and the use of the multiplier. We observed that federal courts had developed the lodestar method for determining attorney's fees to apply to a "special class of cases, in which Congress had enacted fee-authorizing statutes to pay fees to prevailing plaintiffs for the purpose of obtaining public enforcement of Congressional acts." Id. at 831. We then noted that subsequent to Rowe, in Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987), the United States Supreme Court had "substantially restricted, if not eliminated" the use of a contingency risk multiplier as a method of enhancing a statutorily authorized attorney's fees. Quanstrom, 555 So.2d at 832. We observed that the plurality in Delaware Valley was "unconvinced that Congress intended the risk of losing a lawsuit to be an independent basis for increasing the amount of any otherwise reasonable fee." Id. at 831 (quoting Delaware Valley, 483 U.S. at 725, 107 S.Ct. 3078).
We further observed that in the context of a public policy enforcement case decided subsequent to Delaware Valley, the Supreme Court in Blanchard v. Bergeron, 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989), authorized courts to consider the contingency fee arrangement as one factor in determining a reasonable fee, but that the contractual fee arrangement between the plaintiff and his attorney would not cap the amount of fees awarded in this type of case. See Quanstrom, 555 So.2d at 832. In contrast, in Rowe we had capped all court-awarded fees at the prevailing party's fee agreement with counsel. 472 So.2d at 1151.
Although we reaffirmed the use of the contingency risk multiplier in certain cases in Quanstrom, we recognized the need to modify the application of the contingency risk multiplier based on the type of case under consideration:
Different types of cases require different criteria to achieve the legislative or *408 court objective in authorizing the setting of a reasonable attorney's fee. Although we reaffirm our decision in Rowe concerning the lodestar approach as the basic starting point, we find that the use of the contingency fee multiplier should be modified. For a better understanding, we find it appropriate to place attorney's fee cases into the following three categories: (1) public policy enforcement cases; (2) tort and contract claims; and (3) family law, eminent domain, and estate and trust matters. These categories are not intended to be all-inclusive.
555 So.2d at 833 (footnote omitted).
In public policy enforcement cases we adopted the federal approach of Blanchard that utilizes multiple factors to arrive at a reasonable attorney's fee.[6]See Quanstrom, 555 So.2d at 833 (citing Blanchard, 489 U.S. at 93, 109 S.Ct. 939). In these cases, the existence of a contingency fee arrangement is but one factor to consider in determining a reasonable attorney's fee, and the trial court is not limited in its award by the fee agreement between the party and his or her attorney. See id. at 834.
In the second category, involving tort and contract cases, we reaffirmed the use of a multiplier but found that
the trial court should consider the following factors in determining whether a multiplier is necessary: (1) whether the relevant market requires a contingency fee multiplier to obtain competent counsel; (2) whether the attorney was able to mitigate the risk of nonpayment in any way; and (3) whether any of the factors set forth in Rowe are applicable, especially, the amount involved, the results obtained, and the type of fee arrangement between the attorney and his client. Evidence of these factors must be presented to justify the utilization of a multiplier. We find that the multiplier is still a useful tool which can assist trial courts in determining a reasonable fee in this category of cases when a risk of nonpayment is established. However, we find that the multiplier in Rowe should be modified as follows: If the trial court determines that success was more likely than not at the outset, it may apply a multiplier of 1 to 1.5; if the trial court determines that the likelihood of success was approximately even at the outset, the trial judge may apply a multiplier of 1.5 to 2.0; and if the trial court determines that success was unlikely at the outset of the case, it may apply a multiplier of 2.0 to 2.5.
Id. at 834 (emphasis supplied).[7]
Thus, in Quanstrom we did not eliminate the consideration of a contingency risk multiplier in contract cases. Instead, we concluded that in tort and contract cases the multiplier is "a useful tool which can assist trial courts in determining a reasonable fee in this category of cases when a risk of nonpayment is established," while emphasizing that "the criteria and *409 factors utilized in these cases must be consistent with the purpose of the fee-authorizing statute or rule." Id. at 834. Our concern in Quanstrom that the use of the multiplier be consistent with the purpose of the fee-authorizing statute or rule, see id., does not lead to a conclusion that a multiplier can never be considered unless the fees are based on a fee-authorizing statute or rule.
We next discussed contingency multipliers in Lane v. Head, 566 So.2d 508, 511 (Fla.1990), where we found that even when a fee arrangement is partially contingent, the court has discretion to apply a multiplier, reduced by the percentage of the fee that was guaranteed by the fee arrangement. Shortly after Lane was decided, we were confronted with whether our holding in that case mandated the application of a partial multiplier where a commercial bank claimed attorney's fees under a promissory note. See Sun Bank of Ocala v. Ford, 564 So.2d 1078 (Fla.1990).[8]
We concluded in Sun Bank that the commercial bank, as the prevailing party, did not automatically qualify to receive a contingency multiplier simply because its attorney provided representation on a partial contingent fee basis. Id. at 1079. Rather, we found that the critical factor for the court to consider in deciding whether to apply a multiplier was the party's difficulty in finding counsel without risk-enhancement:
"Before adjusting for risk assumption, there should be evidence in the record, and the trial court should so find, that without risk-enhancement plaintiff would have faced substantial difficulties in finding counsel in the local or other relevant market." Therefore, the existence of a contingent-fee agreement between attorney and client does not automatically require application of a multiplier.
Id. (citation omitted) (quoting Delaware Valley, 483 U.S. at 731, 107 S.Ct. 3078).
In Sun Bank we again reiterated the categories enunciated in Quanstrom, stressing that the factors to consider in tort and contract cases included whether the relevant market required a contingency risk multiplier to obtain competent counsel and whether the attorney was able to mitigate the risk of nonpayment in any way. Id. at 1078. We concluded as follows:
The instant case is in the nature of a contract case. We are not aware of any situations where commercial banks have had difficulty finding attorneys to represent them. Indeed, from the myriad of cases involving banks it seems as though attorneys are anxious to represent them. There might be a preference not to accept certain individual cases, but any reluctance generally yields to the reward of gaining other cases and for the business representing a bank engenders.
The instant trial judge rejected the contention that a multiplier was appropriate. He found his duty to be to set a reasonable attorney's fee according to the terms of the promissory note. He arrived at the figure by utilizing a rate of one hundred fifty dollars per hour for the time reasonably spent. In this case and under the circumstances presented the award was reasonable and proper.
Id. at 1079-80. Thus, Sun Bank specifically applied Rowe and Quanstrom and, in doing so, found the record devoid of evidence that the commercial bank had trouble finding counsel, an important factor to consider under Quanstrom. If our intent had been to preclude a contingency multiplier in contract cases where there was no statutory basis for the fee, our detailed analysis in Sun Bank that focused on whether the party would have difficulty securing counsel would have been unnecessary.
*410 This conclusion is reinforced by our recent opinion in Kuhnlein v. Department of Revenue, 662 So.2d 309 (Fla.1995). In that case, this Court noted that: "Rowe and Quanstrom are fee-shifting cases. In a fee-shifting case the adverse party is required by statute or contract to pay attorney fees of the prevailing party." Kuhnlein, 662 So.2d at 311 n. 3 (emphasis supplied).
We recognize that the district courts of appeal have not been uniform in deciding whether a multiplier can be considered in a case where the only authority for a fee award is the parties' contract. The First, Second, and Third District Courts of Appeal have upheld the consideration of contingency multipliers in contract cases, relying on our decisions in Rowe or Quanstrom. See, e.g., Stack v. Lewis, 641 So.2d 969, 970 (Fla. 1st DCA 1994); Askowitz v. Susan Feuer Interior Design, Inc., 563 So.2d 752, 754 (Fla. 3d DCA 1990); Freedom Sav. & Loan Ass'n v. Biltmore Constr. Co., 510 So.2d 1141, 1142 (Fla. 2d DCA 1987); see also Hollub v. Clancy, 706 So.2d 16, 19 (Fla. 3d DCA 1997); cf. Florida Pottery Stores of Panama City, Inc. v. American Nat'l Bank, 578 So.2d 801, 804 (Fla. 1st DCA 1991) (treating contractual and statutory basis for attorney fee award as equivalent). Stack arose from a dispute over a broker's fee and Askowitz arose from a sales contract, and in both cases the fee award was based on a contractual agreement rather than a statutory provision.
The Fourth District in this case relied on its previous decision in Command Credit. See Stamm, 695 So.2d at 375. However, in a more recent opinion, another panel of the Fourth District, without reaching the Command Credit issue, interpreted Quanstrom to mean that in a contract case "there must be evidence that a contingent fee arrangement was necessary in order for the prevailing party to have obtained competent counsel if a multiplier is to be imposed on the nonprevailing party." Simmons v. Royal Floral Distrib., Inc., 724 So.2d 99, 99 (Fla. 4th DCA 1998).
Based on a thorough analysis of our opinions, we find no precedent from this Court precluding a trial court from considering a contingency risk multiplier in a contract case. To the contrary, there is much support to be found in Rowe, Quanstrom, and Sun Bank to indicate that we contemplated a trial court's consideration of a multiplier if evidence in the record supports the need for one.

POLICY CONSIDERATIONS
We now turn to whether any policy concerns should prevent consideration of the application of a multiplier when the contract is the basis for the court-awarded fee. It is true that one of the purposes of certain statutory attorney's fees provisions is to obtain public enforcement of legislative acts through private lawsuits. See Quanstrom, 555 So.2d at 833. However, as we made clear in Quanstrom, public policy enforcement cases are treated differently from other court-awarded fee cases. In public policy enforcement cases, the contingency fee agreement is only one of many factors to consider in awarding a reasonable attorney's fee, and the fee is not capped by the fee agreement between attorney and client. See id. at 833-34.
There are many other types of statutes that authorize attorney's fees but are not considered public policy enforcement cases as contemplated by Quanstrom.[9] While some attorney's fees statutes may have a broader policy purpose, see, e.g., § 627.428, Fla. Stat. (1997) (attorney's fees against insurer),[10] many involve *411 only private disputes between parties. See, e.g, § 506.16, Fla. Stat. (1997) (awarding reasonable attorney's fees in actions to recover milk bottles); 713.29, Fla. Stat. (1997) (attorney's fees for enforcement of a lien). Nevertheless, consideration of a multiplier is authorized by Rowe and Quanstrom in these cases.
A primary rationale for the contingency risk multiplier is to provide access to competent counsel for those who could not otherwise afford it. In Rowe, we observed that the benefit of the contingent fee system is to provide a party with "increased access to the court system and the services of attorneys." 472 So.2d at 1151. We recognized in Rowe that the availability of attorney's fees would have the effect of encouraging plaintiffs to bring meritorious claims that would not otherwise be economically feasible to bring on a noncontingent fee basis. Id. at 1149. These goals are consistent with the Florida Constitution. See art. I, § 21, Fla. Const. (providing that courts shall be open to every person for redress of any injury).
Similarly, in his concurring opinion in Lane, Justice Grimes emphasized that "[t]he justification for a contingency fee multiplier is that without providing an added incentive for lawyers to obtain higher fees, clients with legitimate causes of action (or defenses) may not be able to obtain legal services." 566 So.2d at 513 (Grimes J., concurring). The importance of this policy consideration is highlighted by the fact that the very first factor listed in Quanstrom for courts to consider in determining if a multiplier should be utilized in tort and contract cases is "whether the relevant market requires a contingency fee multiplier to obtain competent counsel." 555 So.2d at 834 (emphasis supplied).
We perceive no policy concern that would prevent a court's consideration of a contingency multiplier when the parties to a contract agree to have the court award reasonable attorney's fees. Instead, we find that the primary policy that favors the consideration of the multiplier is that it assists parties with legitimate causes of action or defenses in obtaining competent legal representation even if they are unable to pay an attorney on an hourly basis. In this way, the availability of the multiplier levels the playing field between parties with unequal abilities to secure legal representation. While a prevailing party's attorney's fee provision in a contract may be a powerful sword in the hands of those who can afford an attorney, a party who would be faced with substantial difficulties in obtaining an attorney without a contingency arrangement ought to be able to claim a multiplier in the appropriate case, if the evidence justifies it.
Further, because our goal in Quanstrom and Rowe was to define an objective structure for the courts to use in determining reasonable attorney's fees, we see no reason for the court to utilize a different method for assessing a reasonable attorney's fee than that set forth in Rowe, Quanstrom, and their progeny. Even if we were to dispense with utilizing a multiplier in a contract case, one of the factors set forth in rule 4-1.5(b) of the Rules Regulating the Florida Bar to be considered in determining a reasonable fee is whether the fee is fixed or contingent. Thus, even without a multiplier, the court would be authorized to award a greater fee based on the contingent nature of the fee agreement, or reduce a fee award where there was no risk of nonpayment. In fact, an upward adjustment of a fee under these circumstances would be analogous to a court's application of a multiplier.

CONCLUSIONS AS TO MULTIPLIER
We hold that the Quanstrom analysis applies to cases where a contract provides *412 the basis for the court-awarded fee, even where there is no independent statutory or rule-based authority for the fee award. A court may consider applying a multiplier as a "useful tool" in determining a reasonable fee if the evidence in the record establishes that: (1) the relevant market requires a contingency multiplier to obtain competent counsel; (2) the attorney was unable to mitigate the risk of nonpayment in any other way; and (3) use of a multiplier is justified based on factors such as the amount of risk involved, the results obtained, and the type of fee arrangement between attorney and client. See Quanstrom, 555 So.2d at 834.
The contract in this case provided only for an award of "reasonable attorney's fees." Therefore, our decision does not rewrite the contract, but only authorizes the use of established criteria for the court to follow in determining a reasonable fee award. The trial court's order specifically found that the criteria for establishing a contingency multiplier had been met. The trial court should not have been precluded from considering a contingency multiplier.

FIVE-DAY MAILING RULE
In the consolidated cross-petition, U.S.B. alleged conflict with other district courts on two issues: (1) whether a trial court's order on attorney's fees can be reviewed by appeal as opposed to motion under Florida Rule of Appellate Procedure 9.400(c) after remand, if the appeal contains issues other than the assessment of attorney's fees;[11] and (2) whether Florida Rule of Appellate Procedure 9.420(d), the five-day mailing rule, applies when parties invoke the court's jurisdiction under rule 9.400(c).[12]
We decline to address the first issue because we find no conflict. See generally Heuss v. State, 687 So.2d 823, 824 (Fla. 1996). As to the second issue, U.S.B. claimed the district court improperly applied the five-day mailing rule, rule 9.420(d), to the rule 9.400(c) motion filed by the sellers' appellate counsel. We agree.
Rule 9.400(c) provides a mechanism to allow parties to seek review in the appellate court of the trial court's assessment of appellate attorney's fees. The rule provides that "[r]eview of orders rendered by the lower tribunal under this rule shall be by motion filed in the court within 30 days of rendition." Fla. R.App. Pro. 9.400(c) (emphasis supplied). "An order is rendered when a signed, written order is filed with the clerk of the lower tribunal." Fla. R.App. P. 9.020(h).
The five-day mailing rule provides as follows:
(d) Additional Time After Service by Mail. If a party, court reporter, or clerk is required or permitted to do an act within some prescribed time after service of a document, and the document is served by mail, 5 days shall be added to the prescribed period.
Fla. R.App. P. 9.420(d) (emphasis supplied). Thus, the five-day mailing rule will only provide an additional five days when an act is required to be done within some time after service of a document, and not when an act is required to be done after the rendition or filing of an order. See, e.g., Turner v. State, 557 So.2d 939, 939 (Fla. 5th DCA 1990); Bouchard v. State, Dep't of Bus. Reg., 448 So.2d 1126, 1126-27 (Fla. 2d DCA 1984). The Fourth District in this case calculated the thirty-day period *413 as beginning from the date the order was "entered and mailed," thus improperly allowing extra days for mailing. See Stamm, 695 So.2d at 375 n. 5. We note, however, that the motion was nonetheless timely because it was filed within thirty days of the rendition of the trial court's order.[13]

CONCLUSION
Based on the foregoing, we answer the certified question in the negative and quash the decision below on that issue and the district court's application of the five-day mailing rule. We also disapprove Command Credit.
It is so ordered.
HARDING, C.J., and SHAW, WELLS and ANSTEAD, JJ., concur.
OVERTON, Senior Justice, concurs specially with an opinion.
OVERTON, Senior Justice, specially concurring.
I concur specially to emphasize that the use of a multiplier is the exception, not the rule, and as I understand the majority opinion, it is not changing any of the principles that this Court previously established in Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla.1985), as modified in Standard Guaranty Insurance Co. v. Quanstrom, 555 So.2d 828 (Fla. 1990), Sun Bank v. Ford, 564 So.2d 1078 (Fla.1990), and State Farm Fire & Casualty Co. v. Palma, 629 So.2d 830 (Fla.1993).
The multiplier is a factor to ensure that the consuming public is able to have counsel to represent them in a legal matter. As explained by the majority, the critical factor for the trial court to consider in its determination of whether a multiplier can be used is whether the party has difficulty in finding counsel and can only obtain counsel if the risk enhancement multiplier is utilized as a factor. In Sun Bank, we explained the trial court's responsibility, stating:
"Before adjusting for risk assumption, there should be evidence in the record, and the trial court should so find, that without risk-enhancement plaintiff would have faced substantial difficulties in finding counsel in the local or other relevant market." Therefore, the existence of a contingent-fee agreement between attorney and client does not automatically require application of a multiplier.
Id. (citation omitted)(quoting Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 483 U.S. 711, 731, 107 S.Ct. 3078, 97 L.Ed.2d 585(1987)).
The multiplier is not automatic and exists and can be used only when its purpose is clearly established in the record. We have only a minimum record in this case, but I have a problem understanding how a multiplier can be used in these circumstances, where we have a million-dollar business transaction. It seems to me that the buyer and the seller in this million-dollar sale of a cement plant would have no difficulty finding attorneys to represent them. It is difficult for me to see why Sun Bank does not control the attorney's fee issue in this case.
NOTES
[1] After briefing and oral argument in this case, the parties settled their claims and filed a joint stipulation of dismissal in this Court. As we have done in the past, we exercise our discretion to retain jurisdiction in this case because we consider this issue to be of great public importance. See State v. Schopp, 653 So.2d 1016, 1018 (Fla.1995); Holly v. Auld, 450 So.2d 217, 218 n. 1 (Fla.1984).
[2] We note that the motion was filed on behalf of Bell and Lagano by Basil E. Dalack, their appellate counsel. Mr. Dalack also filed the petition in this Court seeking review of the district court's decision.
[3] In this case, the parties have not argued whether the evidence supports a need for the multiplier, only whether the multiplier can be applied when the sole basis for the fees is the parties' contract. Further, whether the evidence supports the need is a moot issue with regard to these parties, who have settled their claims. See supra note 1.
[4] As noted in Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145, 1148 (Fla. 1985), we have also recognized a limited exception to this general rule to allow attorney's fees to be assessed for inequitable conduct or as a sanction by the trial court.
[5] The factors formerly contained in Disciplinary Rule 2-106 are now enumerated in Rule of Professional Conduct 4-1.5(b), which provides:

(b) Factors to Be Considered in Determining Reasonable Fee. Factors to be considered as guides in determining a reasonable fee include:
(1) the time and labor required, the novelty, complexity, and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee, or rate of fee, customarily charged in the locality for legal services of a comparable or similar nature;
(4) the significance of, or amount involved in, the subject matter of the representation, the responsibility involved in the representation, and the results obtained;
(5) the time limitations imposed by the client or by the circumstances and, as between attorney and client, any additional or special time demands or requests of the attorney by the client;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, diligence, and ability of the lawyer or lawyers performing the service and the skill, expertise, or efficiency of effort reflected in the actual providing of such services; and
(8) whether the fee is fixed or contingent, and, if fixed as to amount or rate, then whether the client's ability to pay rested to any significant degree on the outcome of the representation.
R. Regulating Fla. Bar 4-1.5(b).
[6] These factors are:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.
Blanchard v. Bergeron, 489 U.S. 87, 91 n. 5, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989) (citing Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir.1974)).
[7] As for the third category of cases, we rejected the use of a multiplier in family law matters because contingency fees are ethically prohibited. See Standard Guar. Ins. Co. v. Quanstrom, 555 So.2d 828, 835 (Fla.1990); see also Rosen v. Rosen, 696 So.2d 697, 699 (Fla.1997). We further observed that in estate and trust matters, because an attorney is generally assured a fee, "[u]nder ordinary circumstances, a contingency fee multiplier is not justified." Quanstrom, 555 So.2d at 835.
[8] The promissory note that was the subject of the action in Sun Bank of Ocala v. Ford, 564 So.2d 1078 (Fla.1990), provided an entitlement to costs of collection, including attorneys' fees. See Respondent's Motion for Attorney's Fees, Sun Bank (No. 75,299).
[9] In Rowe, we observed that at that time the Florida Legislature had enacted more than 70 statutes authorizing the courts to award attorney's fees in specific types of actions, see 472 So.2d at 1148, and that Congress had enacted at least 75 federal statutory grants of authority as of 1977. Id. n. 4.
[10] The purpose of section 627.428, Florida Statutes (1997), which authorizes an award of reasonable attorney's fees to a prevailing insured, is to discourage insurance companies from contesting valid claims, and to reimburse insureds for their attorney's fees incurred when they must enforce in court their contract with the insurance company. See, e.g., State Farm Fire & Cas. Co. v. Palma, 629 So.2d 830, 833 (Fla.1993).
[11] U.S.B. alleged that the decision below conflicts with Underwood v. Elliott, 601 So.2d 317 (Fla. 1st DCA 1992), and Zaremba Florida Co. v. Klinger, 550 So.2d 1131 (Fla. 3d DCA 1989).
[12] U.S.B. claimed that the decision below conflicts with Turner v. State, 557 So.2d 939 (Fla. 5th DCA 1990), Bouchard v. State Department of Business Regulation, 448 So.2d 1126 (Fla. 2nd DCA 1984), Speed v. Florida Department of Legal Affairs, 387 So.2d 459 (Fla. 1st DCA 1980), and Franchi v. Florida Department of Commerce, 375 So.2d 1154 (Fla. 4th DCA 1979).
[13] The trial court order was rendered on October 7, 1996, and on November 6, 1996, the motion was filed seeking review of the assessment of appellate attorney's fees.