825 So.2d 484 (2002)
STERLING CASINO LINES, L.P., Appellant,
v.
James E. CHESTNUT and Montgomery L. Lyautey, Appellees.
No. 5D01-3198.
District Court of Appeal of Florida, Fifth District.
August 30, 2002.
Ted L. Shinkle and Alec D. Russell of Gray, Harris & Robinson, P.A., Melbourne, for Appellant.
Elizabeth Siano-Harris of Stadler & Harris, P.A., Titusville, and Thomas H. Yardley, Cocoa, for Appellees.
PER CURIAM.
AFFIRMED.
SAWAYA and PLEUS, JJ., concur.
COBB, J., dissents, with opinion.
*485 COBB, J., dissenting.
The trial court awarded attorney's fees to the plaintiffs below, Chestnut and Lyautey, as prevailing parties. The reasonableness of the amount of that award is challenged by the defendant. The defendant does not raise an issue as to whether the plaintiffs prevailed on the significant issues of the litigation.
The facts in this case are simple. Chestnut and Lyautey were discharged as food handlers for Sterling Casino Lines after revealing they were both afflicted with HIV and/or AIDS, and could no longer handle the arduous workload assigned to them. They brought an action against Sterling claiming disability discrimination[1] and seeking damages "in excess of $50,000.00." The principal claim related to emotional damages; that claim was extinguished by a directed verdict at the close of the plaintiffs' evidence, leaving only a relatively minor claim for lost wages, for which the jury recompensed the plaintiffs with a verdict of $3,042.00 ($2,160.00 for Chestnut and $882.00 for Lyautey).
Despite this small claims court-type recovery, the plaintiffs' trial counsel, Thomas Yardley, sought $110,000.00 (or $980.00 per hour) in attorney's fees at the post-trial fee hearing.[2] This amount was based upon an unchallenged number of 112.2 hours reasonably spent on the case. In support of his fee application Yardley presented the testimony of two attorneys, Graham and Faherty. The former gave his opinion that Yardley was entitled to as much as $140,250.00 (or $1,250.00 per hour) for his services. Yardley's other opinion fee witness, Faherty, testified that, in his opinion, a reasonable fee would be $111,200.00 (or approximately $992.00 per hour). The trial court awarded a lodestar fee of $39,270.00 based upon a finding that 112.2 hours were reasonably spent on the case by counsel and that $350.00 per hour was a reasonable rate. Neither Graham nor Faherty cited a single specific attorney's hourly rate in support of their arbitrary figures, which directly contravenes the standard enunciated in Norman v. Hous. Auth. of City of Montgomery, 836 F.2d 1292 (11th Cir.1988):
It should also be noted that in line with the goal of obtaining objectivity, satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits. Testimony that a given fee is reasonable is therefore unsatisfactory evidence of market rate. See Hensley, 461 U.S. at 439 n. 15, 103 S.Ct. at 1943 n. 15. Evidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence. The weight to be given to opinion evidence of course will be affected by the detail contained in the testimony on matters such as similarity of skill, reputation, experience, similarity of case and client, and breadth of the sample of which the expert has knowledge.
The trial court's rate determination ignored the fact that Yardley's standard fee in non-contingent cases is $200.00 per hour; it also ignored the fact that the specific and unrebutted evidence before the trial court revealed that $295.00 per hour or less was a standard rate for lawyers specializing exclusively in labor and employment cases in Central Florida and possessing from 25-30 years experience in *486 the field as opposed to Yardley's general practice, civil and criminal, since 1988. The only case law discussing reasonable hourly rates presented at the hearing in support of Yardley's fee application was Lang v. Reedy Creek Improvement Dist., 1997 WL 809200 (M.D.Fla.1997). In that case an award of $250.00 per hour was given to an attorney with 30 years experience in the field.
It should be noted that this case did not involve novel or difficult issues of law. It was conceded at trial that Chestnut and Lyautey were disabled and had been terminated. Yardley was not precluded from other employment by accepting the instant litigation, which was not protracted and lasted only one year. Moreover, the fact that the fee was contingent is not a factor in considering an hourly rate. Bell v. U.S.B. Acquisition Co., Inc., 734 So.2d 403 (Fla.1999). It should also be pointed out that the plaintiffs in this action neither sought nor obtained significant injunctive relief. Nor did they achieve any modification of existing civil rights law. See Farrar v. Hobby, 506 U.S. 103, 114, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). As pointed out in the latter case, statutory fees "were never intended to produce windfalls to attorneys." Farrar, 506 U.S. at 115, 113 S.Ct. 566.
The attorney's fee award in this case is some 13 times greater than the clients' joint recovery, and is based on a rate considerably higher than any attributed to the experienced labor and employment attorneys cited to the trial court. The trial court's award was based upon a finding, inter alia, that Yardley "obtained a positive result for the clients." The word "positive," given the paucity of the recovery, appears to be a euphemism for "better than nothing." Surely, it was a bitter disappointment to the clients, who obviously were seeking a six-figure recovery. The trial court's finding that this result entitled Yardley to a fee based upon an hourly rate 75% greater than his normal rate, and greater than that of experienced specialists in the field, is aberrational to say the least. Classifying this result as "positive" is somewhat akin to calling an apple an orange; the fact remains that it is still an appleand a rotten one at that.
In Norman, it was stated:
After the loadstar is determined by multiplication of a reasonable hourly rate times hours reasonably expended, the court must next consider the necessity of an adjustment for results obtained. If the result was excellent, then the court should compensate for all hours reasonably expended. If the result was partial or limited success, then the loadstar must be reduced to an amount that is not excessive. In doing so, the court may attempt to identify specific hours spent in unsuccessful claims or it may simply reduce the award by some proportion. A reduction is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole. Where all theories derived from a common core of operative facts, the focus should be on the significance of overall results as a function of total reasonable hours. (Emphasis added).
Norman at 1302 (relying on Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). I agree with the following statement from the reply brief of the appellant:
It is also interesting that Appellees rely on George v. GTE Directories Corp. [114 F.Supp.2d 1281 (M.D.Fla.2000) ], to support this position. In that case, the Middle District of Florida court awarded attorney's fees based on a reasonable hourly rate of $200.00 per hour to a lead attorney who had more than thirty (30) years experience in the field of employment and labor law. George, 114 *487 F.Supp.2d at 1286-89. After establishing the loadstar fee award, the George court reduced the award by 5% to reflect the plaintiff's limited success at trial, even though the plaintiff obtained a judgment for $15,000.00 and the jury awarded punitive damages for retaliation. Id. at 1281.
Appellees fail to cite a single controlling case to rebut the mandate of Norman v. Housing Authority, which establishes that, after the loadstar fee award is calculated based upon a reasonable hourly rate, the award must be reduced to reflect Appellees' limited success at trial.
In the appellee's answer brief the only responsive argument directed to the poor result obtained at trial is an allusion to testimony at the fee hearing from Attorney Graham and the generalized statement that a plaintiffs success is not measured solely by the amount of damages awarded by the jury. The response to these arguments is two-fold: First, Graham's opinion testimony that Yardley had "exceptional success in this case" and would be entitled to a fee of as much as $140,250.00 is patently absurd on its face and should be disregarded in its entirety. As noted, even the trial judge could not bring himself to go beyond the finding that the result was "positive." Faherty's testimony was only slightly less incredible than that of Graham. As to the argument that success cannot be measured solely by damages awarded, the appellee's brief fails to specify a single other factor justifying the increased rate in this casebecause there is none.
I would reverse and remand for reconsideration of the attorney's fee award in this case before a different trial judge.
NOTES
[1] See The Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. (the ADA) and the Florida Civil Rights Act, § 760.01, et seq., Fla. Stat. (the FCRA).
[2] This amount apparently contemplated use of a multiplier, which the court correctly found was precluded by Federal law. See City of Burlington v. Dague, 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992).