NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

CITIZENS PROPERTY INSURANCE
CORP.,

      Appellant/Cross-Appellee,

v.

RIVER OAKS CONDOMINIUM II
ASSOCIATION, INC., a/k/a RIVER
OAKS II CONDO ASSOCIATION,
INC.,

      Appellee/Cross-Appellant.

Case No. 2D13-4331

Opinion filed March 30, 2016.

Appeal from the Circuit Court for
Hillsborough County; Christopher C.
Sabella, Judge.

Kara Berard Rockenbach of Methe &
Rockenbach, P.A., West Palm Beach,
for Appellant/Cross-Appellee.

George A. Vaka and Nancy A. Lauten
of Vaka Law Group, Tampa, for
Appellee/Cross-Appellant.


NORTHCUTT, Judge.

      Citizens Property Insurance Corp. appeals a final order awarding over

$1.4 million in fees, costs, and prejudgment interest to River Oaks Condominium II

Association, Inc., following the latter's successful lawsuit on a sinkhole claim.  River

Oaks is dissatisfied with the amount, and it cross-appeals. We affirm in part and reverse in part.

River Oaks is a multi-building condominium property that was insured by Citizens under a policy that included sinkhole coverage. Damage was initially noted in one building in February 2005. In April, River Oaks hired an attorney (Richard Wilson), a public adjuster (Transco American Claims), and a property management company (University Properties, Inc.) to address this issue. About two weeks later, Transco gave notice to Citizens of possible sinkhole losses at the property. After some delay, Citizens sent an independent adjuster to perform an inspection. The adjuster was shown the building with the most noticeable damage and was informed that other buildings in the complex were also showing signs of sinkhole activity. Although the adjuster agreed that a geotechnical engineer was needed for a sinkhole investigation, Citizens did not retain one. Instead, Citizens took the position that the insurance policy did not cover the cost of filling sinkholes.

River Oaks retained Central Florida Testing Laboratories, which confirmed sinkhole activity as a cause of damage. In September 2005, it filed suit against Citizens. The complaint alleged breach of contract based in part on Citizens' failure to conduct the investigation required by section 627.707, Florida Statutes (2004), for sinkhole claims. It also sought a declaration that the insurance policy provided sinkhole coverage, including stabilization costs.

River Oaks made specific allegations of damage to the one building and general allegations regarding the other buildings. For example, the complaint alleged:

On or about March 2005, River Oaks discovered substantial damage occurring to Building 19[1] caused by sinkhole activity, as well as damage occurring to other buildings insured by Citizens. . . .

Despite numerous requests by representatives of River Oaks, Citizens has failed to engage an engineer or professional geologist as required by law to determine the cause of the loss to the subject building and to investigate possible damage to River Oaks other buildings. . . .

The geotechnical engineering firm retained by River Oaks has concluded that Building 19 has been damaged by sinkhole activity and has recommended that the other buildings be investigated for possible loss caused by sinkhole activity. . . .

WHEREFORE, River Oaks demands judgment for damages, including investigative costs to determine if sinkhole activity is occurring, costs to repair, restore or replace the subject buildings . . . , together with all engineering or architectural fees to repair or replace the subject buildings . . . .

Citizens sought an appraisal without admitting coverage. By the time of a hearing on Citizens' motion to dismiss or abate, River Oaks had furnished a list identifying more buildings that showed sinkhole damage. The court ordered appraisal for all affected buildings and required Citizens to conduct inspections and subsurface testing. Over the next two years, the testing and appraisal process resulted in awards totaling $4,777,607 for damage to twelve buildings in the complex.

Midway through this process, the River Oaks' board of directors was replaced with a board that was inexplicably hostile to the sinkhole claims, despite the experts' confirmation of sinkholes. The new board terminated attorney Wilson, Transco,

---

[1]Known locally as 19, this building was identified in the policy as building 7, a fact that was clarified in an amended complaint.

and University Properties without compensating them as required under their individual contracts; this resulted in third-party claims.

The original board was later restored. The board hired attorney Kennan Dandar in November 2008. By this point, Citizens had paid the appraisal awards. River Oaks then settled or concluded the third-party claims. It also sought attorneys' fees, costs, and prejudgment interest from Citizens, which brings us to this appeal.

Citizens challenges several items taxed as costs in addition to the use of a multiplier for calculating attorney Dandar's fee. We agree with the circuit court that the wrongful act doctrine is inapplicable in this case. Cf. Reiterer v. Monteil, 98 So. 3d 586, 588 (Fla. 2d DCA 2012) (explaining that the doctrine allows for the recovery of certain costs and expenses as an element of damages when the defendant's wrongful act has involved the claimant in litigation with others, necessitating the expenses).

Citizens argues that $759,578.56 in reimbursement for the public adjuster and property management fees was improperly awarded to River Oaks as a taxable cost. The Statewide Uniform Guidelines for Taxation of Costs in Civil Actions provides guidance for trial courts, which have broad discretion in the taxation of costs. In re Amendments to Uniform Guidelines for Taxation of Costs, 915 So. 2d 612, 614 (Fla. 2005) ("The guidelines . . . are not intended to be mandatory, and the appropriate assessment of costs in any particular proceeding remains within the discretion of the trial court."). We conclude that the trial court abused its discretion in taxing the property management fees and public adjuster fees because they were not litigation costs. Further, as compared to expert witnesses, a public adjuster is more akin to a consulting

expert, whose costs should not be taxed according to the guidelines. We agree with Citizens that these were not proper taxable costs, and we reverse on this issue.

Citizens argues that $99,741.55 was improperly awarded to River Oaks as a taxable cost for various expenses and fees in the appraisal process. But under the insurance policy, River Oaks was required to pay its own appraiser and bear an equal share of the umpire and other appraisal expenses. We reverse on this issue.

Finally, Citizens challenges the fee award to attorney Dandar, specifically the use of a 2.0 multiplier in calculating his fee. A multiplier is appropriate when

> (1) the relevant market requires a contingency multiplier to obtain competent counsel; (2) the attorney was unable to mitigate the risk of nonpayment in any other way; and (3) use of a multiplier is justified based on factors such as the amount of risk involved, the results obtained, and the type of fee arrangement between attorney and client.

Bell v. U.S.B. Acquisition Co., 734 So. 2d 403, 412 (Fla. 1999) (citing Standard Guar. Ins. Co. v. Quanstrom, 555 So. 2d 828, 834 (Fla. 1990)). The fee agreement in this case was not a true contingency contract. Instead, it guaranteed payment at a lesser hourly rate, which mitigated the risk of nonpayment, and the evidence showed that Dandar had indeed been paid under the contract. See id. at 407 ("[W]e recognized the economic reality that attorneys who work on a contingent fee basis only receive compensation when they prevail, and thus must charge a higher fee than if they had been guaranteed an hourly rate." (citing Fla. Patient's Comp. Fund v. Rowe, 472 So. 2d 1145, 1151 (Fla. 1985), holding modified by Quanstrom)). A multiplier was not appropriate here, and we reverse on this issue.

On cross-appeal, River Oaks argues that the court erred by limiting its recovery of attorneys' fees and prejudgment interest to only building 19. We agree that

the suit encompassed the other buildings in the condominium complex, and we reverse on this issue. As explained above, River Oaks sued in part to enforce Citizens' obligation to investigate the sinkhole claim.[2] Its complaint clearly alleged that buildings other than building 19 were damaged, and it sought to recover damages, including "costs to repair, restore or replace the subject buildings [plural]." We conclude that the allegations were sufficient to include the other buildings in the condominium complex because they were sufficient to state a claim "with sufficient particularity for a defense to be prepared." Arky, Freed, Stearns, Watson, Greer, Weaver & Harris, P.A. v. Bowmar Instrument Corp., 537 So. 2d 561, 563 (Fla. 1988). Accordingly, we reverse on this issue and remand for the court to award prejudgment interest and attorney's fees connected with the other buildings.

---

[2]Section 627.707 provided in part as follows:
(1) Upon receipt of a claim for a sinkhole loss, an insurer must meet the following minimum standards in investigating a claim:

　　(a) Upon receipt of a claim for a sinkhole loss, the insurer must make an inspection of the insured's premises to determine if there has been physical damage to the structure which might be the result of sinkhole activity.

　　(b) If, upon the investigation pursuant to paragraph (a), the insurer discovers damage to a structure which is consistent with sinkhole activity or if the structure is located in close proximity to a structure in which sinkhole damage has been verified, then prior to denying a claim, the insurer must obtain a written certification from an individual qualified to determine the existence of sinkhole activity, stating that the cause of the claim is not sinkhole activity, and that the analysis conducted was of sufficient scope to eliminate sinkhole activity as the cause of damage within a reasonable professional probability. The written certification must also specify the professional discipline and professional licensure or registration under which the analysis was conducted.

On the issue of an expert witness fee for the fee hearing, we affirm without further discussion.

Affirmed in part, reversed in part, and remanded for further proceedings.


KELLY and BLACK, JJ., Concur.