# Supreme Court of Florida

_____

No. SC16-103
_____

**WILLIAM JOYCE, et al.,**
Petitioners,

vs.

**FEDERATED NATIONAL INSURANCE COMPANY,**
Respondent.

[October 19, 2017]

PARIENTE, J.

The issue in this case is whether trial courts may apply a contingency fee multiplier to an award of attorney's fees to a prevailing party only in "rare" and "exceptional" circumstances, as the Fifth District Court of Appeal held in Federated National Insurance Co. v. Joyce, 179 So. 3d 492 (Fla. 5th DCA 2015). Petitioners, the insureds in a successful dispute with their homeowners' insurance carrier, assert that the Fifth District's opinion misapplied our precedent from Florida Patient's Compensation Fund v. Rowe, 472 So. 2d 1145 (Fla. 1985), and its progeny. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.

We agree with Petitioners and conclude that the Fifth District erred by imposing a "rare" and "exceptional" circumstances requirement before a trial court may apply a contingency fee multiplier. We reaffirm our decisions regarding the requirements for the application of a contingency fee multiplier in Rowe, 472 So. 2d 1145, Standard Guaranty Insurance Co. v. Quanstrom, 555 So. 2d 828 (Fla. 1990), and Bell v. U.S.B. Acquisition Co., 734 So. 2d 403 (Fla. 1999). Accordingly, we quash the Fifth District's decision.

**FACTS**

William and Judith Joyce, an elderly retired couple, filed a claim for insurance benefits with their homeowners' insurance carrier, Federated National Insurance Company ("Federated National"), following water damage to their home. Joyce, 179 So. 3d at 493. Federated National denied coverage on the basis of alleged material misrepresentations made by the Joyces in the application process—namely, that the Joyces failed to disclose certain losses they had with their previous carrier. Id. The Joyces hired an attorney on a contingency fee basis because they could not afford an attorney at an hourly rate and filed suit against Federated National alleging that the insurer wrongfully denied their claim. After months of litigation, Federated National finally agreed to settle the claim. The parties stipulated that the Joyces were entitled to recover reasonable attorney's fees. The Joyces' right to recover attorney's fees is derived from section 627.428,

Florida Statutes (2014), a fee-shifting statute which authorizes an award of attorney's fees only to an insured and provides, in relevant part:

> (1) Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had.

At the fee hearing, the trial court heard testimony from the Joyces' attorney and fee expert and Federated National's fee expert. The trial court also examined certain evidence exhibits, including time records for the Joyces' attorney and a copy of the contingency fee agreement. After the hearing, the trial court awarded the Joyces $76,300 in attorney's fees, using a two-step process. First, the court calculated the "lodestar" amount—the number of hours reasonably incurred by the Joyces' attorney, multiplied by a reasonable hourly rate—as being $38,150, or 109 hours reasonably expended at a reasonable hourly rate of $350. In determining the lodestar amount, the trial court noted that it reviewed and considered the factors set forth in Florida Rule of Professional Conduct 4-1.5, in accordance with this Court's decisions in Rowe and Quanstrom.

Second, the trial court applied a contingency fee multiplier of 2.0 to the lodestar amount. In doing so, the trial court analyzed the following factors set

- 3 -

forth in Quanstrom for determining whether a contingency fee multiplier is warranted: (1) whether the relevant market requires a contingency fee multiplier to obtain competent counsel; (2) whether the attorney was able to mitigate the risk of nonpayment in any way; and (3) whether any of the factors set forth in Rowe are applicable, especially the amount involved, the results obtained, and the type of fee arrangement between the attorney and his client. See Quanstrom, 555 So. 2d at 834.

As to the first Quanstrom factor—the "relevant market"—the trial court relied on testimony from the Joyces' attorney and their fee expert that both were unaware of any other attorneys in St. Johns County who specialized in representing first-party plaintiffs against their respective insurance companies. The trial court also observed that the Joyces' fee expert testified that a contingency fee multiplier was necessary to obtain competent counsel, based on the expert having "interviewed attorneys that accept claims against insurance companies where claims have been denied."

The trial court cited to testimony from the Joyces' attorney that she took the Joyces' case with the "hope and expectation" that, should she be successful, the court would award a contingency fee multiplier when calculating her attorney's fees. She further testified that she would not have taken the case without that possibility because it would not have been economically feasible. Because she

often fails to recover some or all of the fees owed on cases, the Joyces' attorney testified that the possibility of a contingency fee multiplier is critical in her decision whether to accept this type of case.

The trial court concluded that "there are few or no other attorneys who undertake this work who have offices in the St. Augustine area," and the Joyces would likely not have found another competent attorney in that area who would have agreed to take the case "without the possibility of a contingency fee multiplier." Likewise, the trial court explained, citing Massie v. Progressive Express Insurance Co., 25 So. 3d 584, 585 (Fla. 1st DCA 2009), that use of a multiplier in this case is supported by "[e]xpert testimony that a party would have difficulty securing counsel without the opportunity for a multiplier."

As to the second Quanstrom factor, the trial court found that the Joyces' attorney could not have mitigated the risk of nonpayment. The court relied on testimony from the Joyces' attorney that the Joyces told her they could not pay a retainer, as well as testimony from the Joyces' fee expert that there was no meaningful way to have mitigated the risk of nonpayment in this case.

As to the third Quanstrom factor, the trial court found that the Rowe factors were present, including the amount involved, the results obtained, and the type of fee arrangement. Although the amount involved "was not exceptionally large," it was material to the Joyces and the results favored the Joyces. Also, the trial court

observed that "these cases are difficult" and involve "complex" issues, including "policy interpretation, application of exclusion language, agency law, and other issues." Finally, the trial court explained that, based on the testimony, "this was a complex commercial case, with serious consequences to the [Joyces], especially after Federated [National] submitted a proposal for settlement."

The trial court concluded in its order that a multiplier of 2.0 was appropriate because "the likelihood of success at the outset was even at best." The trial court relied on the following language from Quanstrom:

> If the trial court determines that success was more likely than not at the outset, it may apply a multiplier of 1 to 1.5; if the trial court determines that the likelihood of success was approximately even at the outset, the trial judge may apply a multiplier of 1.5 to 2.0; and if the trial court determines that success was unlikely at the outset of the case, it may apply a multiplier of 2.0 to 2.5.

555 So. 2d at 834.

Federated National appealed both the trial court's calculation of the lodestar amount and its use of the contingency fee multiplier. On appeal, the Fifth District affirmed the lodestar amount but reversed the trial court's use of a contingency fee multiplier, concluding that the federal lodestar approach includes "a 'strong presumption' that the lodestar represents the 'reasonable fee.' " Joyce, 179 So. 3d at 493 (quoting Progressive Express Ins. Co. v. Schultz, 948 So. 2d 1027, 1030 (Fla. 5th DCA 2007)). The Fifth District also quoted State Farm Florida Insurance Co. v. Alvarez, 175 So. 3d 352 (Fla. 3d DCA 2015), which cited to the United

- 6 -

States Supreme Court case of <u>Perdue v. Kenny A. ex rel. Winn</u>, 559 U.S. 542, 544 (2010), for the proposition that a contingency fee multiplier is to be used only in " 'rare' and 'exceptional' circumstances." <u>Joyce</u>, 179 So. 3d at 494. Lastly, the Fifth District concluded, in contradiction to the trial court that heard the testimony at the evidentiary hearing, that this case was not complex and that the Joyces had no trouble finding an attorney to represent them. <u>Id.</u>

This Court accepted review based on conflict with our precedent regarding the application of contingency fee multipliers.

**ANALYSIS**

We begin with an analysis of the relevant jurisprudence from this Court and the United States Supreme Court to understand the interplay between our jurisprudence and that of the United States Supreme Court regarding contingency fee multipliers. We then explain why we continue to adhere to our precedent, which does not utilize a "rare" and "exceptional" requirement before a trial court may apply a contingency fee multiplier. We further explain why we reject the United States Supreme Court precedent, which has eliminated a contingency fee multiplier to attorney's fees awards under federal statutes.

This Court first addressed contingency fee multipliers in 1985 in <u>Rowe</u>, a medical malpractice case involving section 768.56, Florida Statutes (1981), which provided for a prevailing party award of a "reasonable attorney's fee." <u>Rowe</u>, 472

So. 2d at 1146. Rowe "adopt[ed] the federal lodestar approach for computing reasonable attorney fees," id., in part due to "a perceived lack of objectivity and uniformity in court-determined reasonable attorney fees." Id. at 1149. Rowe noted that although each case would turn on its own facts, it was imperative "to articulate specific guidelines to aid trial judges in the setting of attorney fees." Id. at 1150. In other words, the federal lodestar approach was to "provide[] a suitable foundation for an objective structure." Id.

Rowe established the eight criteria set forth in Disciplinary Rule 2-106(b) of the Florida Bar Code of Professional Responsibility as the criteria to be considered in determining reasonable attorney's fees. Those criteria, which Rowe noted were essentially the same as those considered by federal courts at the time, are:

(1)  The time and labor required, the novelty and difficulty of the question involved, and the skill requisite to perform the legal service properly.

(2)  The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3)  The fee customarily charged in the locality for similar legal services.

(4)  The amount involved and the results obtained.

(5)  The time limitations imposed by the client or by the circumstances.

(6)  The nature and length of the professional relationship with the client.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

(8) Whether the fee is fixed or contingent.

Id. at 1150 & n.5. The eight criteria now found in Rule of Professional Conduct 4-1.5 are substantially similar to those addressed in Rowe. Under Rowe, a trial court must first determine the lodestar amount, which is the number of attorney hours reasonably expended multiplied by a reasonable hourly rate. Id. at 1150-51. In calculating the hourly rate, the trial court should look to all eight Rowe factors except "the 'time and labor required,' the 'novelty and difficulty of the question involved,' the 'results obtained,' and '[w]hether the fee is fixed or contingent.' "[1] Id. The trial court must set forth "specific findings" as to its determination of the number of hours, the hourly rate, and any reduction or enhancement factors. Id. at 1151.

The trial court may then adjust the lodestar amount based upon "a 'contingency risk' factor and the 'results obtained.' " Id. Rowe noted that the contingency risk factor (contingency fee multiplier) is a factor that trial courts

---

1. The "time and labor required" and the "novelty and difficulty of the question involved" are excluded from the calculation of the hourly rate because those factors are already taken into account in calculating the reasonable number of hours. See Rowe, 472 So. 2d at 1150 ("The 'novelty and difficulty of the question involved' should normally be reflected by the number of hours reasonably expended on the litigation.").

"must consider . . . when awarding a statutorily-directed reasonable attorney fee." Id. Rowe also established certain caps, depending on the fee arrangement, and set a range for the multiplier of 1.5 to 3.0, depending upon the "likelihood of success" at the outset of the case. Id. If a trial court adjusts the lodestar amount, "it must state the grounds on which it justifies the enhancement or reduction." Id.

Nowhere in Rowe did this Court state that the lodestar amount includes "a strong presumption" of reasonableness which may only be overcome in "rare and exceptional circumstances." See Joyce, 179 So. 3d at 493-94. Rather, Rowe indicated that the federal lodestar approach provided a "suitable foundation," that trial courts "must consider" a contingency fee multiplier, and, "when appropriate," the trial judge may adjust the fee on the basis of a contingency fee multiplier, provided that he or she sets forth specific findings. 472 So. 2d at 1150-51. Thus, the Fifth District's opinion in Joyce incorrectly interpreted this Court's holding of Rowe.

Five years after deciding Rowe, this Court reexamined Rowe in Quanstrom, a case involving section 627.428, Florida Statutes (1987)—the same statutory provision at issue in this case. Quanstrom reexamined Rowe for two reasons. First, the United States Supreme Court had subsequently issued two decisions involving contingency fee multipliers—Blanchard v. Bergeron, 489 U.S. 87 (1989), and Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 483

- 10 -

U.S. 711 (1986).  See Quanstrom, 555 So. 2d at 829.  Second, there was confusion as to whether trial courts were required to impose a contingency fee multiplier after Rowe.  Id. at 829, 831.

Quanstrom first examined the United States Supreme Court's decision in Delaware Valley, involving the award of attorney's fees to the prevailing party pursuant to § 304(d) of the Clean Air Act, 42 U.S.C. § 7604(d).  Quanstrom noted that although the United States Supreme Court in Delaware Valley "unanimously rejected that portion of the lodestar approach pertaining to the contingency fee multiplier," the Court could not agree on how to account for the risk of nonpayment.  Id. at 831.  Quanstrom also noted that Delaware Valley was a plurality opinion with four dissenting justices who advocated "a market approach," which considered various factors, including "whether the attorney was able to mitigate the risk of nonpayment in any way."  Id. (citing Delaware Valley, 483 U.S. at 747 (Blackmun, J., dissenting)).

In Delaware Valley, the plurality analyzed why, based on the facts of the case, a contingency fee multiplier was inappropriate, even if the fee-shifting statute otherwise permitted risk enhancement.  See Delaware Valley, 483 U.S. at 728.  One reason was that "[b]efore adjusting for risk assumption, there should be evidence in the record, and the trial court should so find, that without risk enhancement plaintiff would have faced substantial difficulties in finding counsel

- 11 -

in the local or other relevant market." Id. at 731 (emphasis added).  The Court

found no such "relevant market" findings in the record.  Id.

The Quanstrom Court also noted Justice O'Connor's concurring opinion in

Delaware Valley, which advocated for an examination of how the local market

compensates for contingency cases as a class, and in which she agreed with the

plurality that no risk enhancement is proper unless the prevailing party "would

have faced substantial difficulties in finding counsel in the local or other relevant

market."  See Quanstrom, 555 So. 2d at 831-32 (citing Delaware Valley, 483 U.S.

at 733 (O'Connor, J., concurring in part and concurring in the judgment)).

Next, the Quanstrom Court examined the United States Supreme Court's

decision in Blanchard, which involved attorney's fees in the context of a public

policy enforcement case brought under 42 U.S.C. § 1983.[2]  Quanstrom interpreted

Blanchard as holding that "a contingency fee arrangement between a plaintiff and

his counsel is only one factor to be considered and cannot, standing alone, limit the

trial judge's discretion in setting a reasonable fee."  Quanstrom, 555 So. 2d at 832.

Significantly, this Court in Quanstrom "reaffirm[ed] . . . Rowe concerning

the lodestar approach as the basic starting point" but recognized a need to modify

the use of contingency fee multipliers to better accommodate the use of

---

2. A prevailing party is entitled to an award of attorney's fees under the
provisions of 42 U.S.C. § 1988.

contingency fee multipliers in different types of cases. Id. at 833. In doing so Quanstrom separated attorney's fees cases into the following three categories: (1) public policy enforcement cases; (2) tort and contract claims; and (3) family law, eminent domain, and estate and trust matters, each with a separate means of determining the appropriate amount of attorney's fees. Id. In category one cases, the fact that the case was taken on the basis of a contingency fee is "but one of [twelve enumerated] factors to be considered" in assessing the appropriate amount of attorney's fees. Id. at 834. In category three cases, which are calculated using the lodestar amount, this Court held that a contingency fee multiplier is generally "not justified." Id. at 835.

As to category two, which applies to insurance coverage disputes, reasonable attorney's fees are calculated using the two-step approach that the trial court used in this case. With respect to the availability of a contingency fee multiplier, Quanstrom "reaffirm[ed] the principles set forth in Rowe" for calculating the lodestar amount and the Court then set forth the following three factors for trial courts to consider in determining the necessity of a contingency fee multiplier: "(1) whether the relevant market requires a contingency fee multiplier to obtain competent counsel; (2) whether the attorney was able to mitigate the risk of nonpayment in any way; and (3) whether any of the factors in Rowe are applicable, especially, the amount involved, the results obtained, and the type of

fee arrangement between the attorney and his client." Id. at 834. Quanstrom observed that "the multiplier is still a useful tool which can assist trial courts in determining a reasonable fee in this category of cases when a risk of nonpayment is established," and "the criteria and factors utilized in these cases must be consistent with the purpose of the fee-authorizing statute or rule." Id. Lastly, Quanstrom reiterated the caps established in Rowe and lowered the multiplier range to 1.0 to 2.5 (down from the 1.5 to 3.0 range established in Rowe). Id.

In short, Quanstrom made clear that trial judges are not required to use a multiplier; but when they do, evidence must be "presented to justify the utilization of a multiplier." Id. Although the Quanstrom opinion did use the terms "rare" and "extraordinary," they were not used as a prerequisite to the application of a contingency fee multiplier:

> We have identified these categories to illustrate that different criteria for different types of cases must be considered in calculating attorney's fees. We emphasize that the principles to be utilized in computing these fees must be flexible to enable the courts to consider rare and extraordinary cases with truly special circumstances.

Id. at 835 (citing State Farm Fire & Cas. Co. v. Palma, 555 So. 2d 836 (Fla. 1990)).

Federated National and the Fifth District misconstrue this language from Quanstrom as holding that the multiplier itself was only to be used in rare and extraordinary circumstances. Rather, Quanstrom was referring to preserving flexibility in terms of the overall framework—for example, the different criteria for

different categories of cases—for computing fees in those rare and extraordinary cases which might otherwise be pigeonholed into a particular category or which may yield a much smaller fee amount than would otherwise be reasonable.

On the same day this Court decided Quanstrom, it also decided Palma, 555 So. 2d 836, another case involving the calculation of reasonable attorney's fees under section 627.428, Florida Statutes. Palma held that the trial court properly applied a contingency fee multiplier of 2.6, resulting in an award of attorney's fees in the amount of $253,500, in a case where the amount in dispute was only $600. 555 So. 2d at 836-37.

In Palma, the insurance company denied a claimed expense for a particular medical examination and used the case to establish nationwide precedent because the medical procedure was becoming more widely used. The result was a lengthy trial with testimony from multiple medical professionals. Moreover, three expert witnesses testified as to the reasonableness of the 650 hours spent by plaintiff's attorney, as well as the $150 hourly rate. Id. at 838. Palma upheld the application of the contingency fee multiplier and the trial judge's application of the Rowe factors, noting that the case was an "illustration of the need for flexibility to allow for this type of unique and rare case, especially where the prevailing party has not been the primary cause of the extensive litigation." Id. (emphasis added). Again, this Court's use of the term "rare" was a reference not to the use of the multiplier

- 15 -

itself but rather to the need for flexibility in certain cases with respect to the application of the factors considered in determining the <u>amount</u> of the multiplier.

This Court again recognized the validity of the contingency fee multiplier when it decided <u>Lane v. Head</u>, 566 So. 2d 508 (Fla. 1990), as well as <u>Sun Bank of Ocala v. Ford</u>, 564 So. 2d 1078 (Fla. 1990). In <u>Lane</u>, this Court was asked to decide "whether a trial court should apply the 'lodestar' formula, . . . to enhance customary attorney's fees when the client and attorney have agreed to make those fees only partially contingent on the outcome of the case." 566 So. 2d at 509. This Court held in the affirmative, finding that trial courts have the discretion to apply a multiplier in partially contingent cases, but not the same level of enhancement as in fully contingent cases. <u>Id.</u> at 510-11. <u>Lane</u> noted the policy reasons in support of its holding:

> Attorneys should be encouraged to take cases based on a partial contingency-fee arrangement, since this policy also will encourage attorneys to provide services to persons who otherwise could not afford the customary legal fee. No incentive would exist under the approach taken by the district court below, because no "enhancement" of the customary fee would be given to offset losses.

<u>Id.</u> at 511.

In <u>Sun Bank</u>, the issue was whether a commercial bank was entitled to a contingency fee multiplier as the prevailing party in an action on a promissory note, given that the agreement with its attorney was a partial contingency fee agreement. <u>Sun Bank</u>, 564 So. 2d at 1079. The Court again recognized that the

- 16 -

contingency fee multiplier may apply in partial contingency fee arrangements but held that the trial court's use of a contingency fee multiplier was erroneous because "commercial banks have [no] difficulty finding attorneys to represent them." Id. Sun Bank cited specifically to the United States Supreme Court's plurality opinion in Delaware Valley, stating: "Before adjusting for risk assumption, there should be evidence in the record, and the trial court should so find, that without risk-enhancement plaintiff would have faced substantial difficulties in finding counsel in the local or other relevant market." Id. (citing Delaware Valley, 483 U.S. at 731).

In 1992, the United States Supreme Court revisited the issue of contingency fee multipliers under fee-shifting statutes in Burlington v. Dague, 505 U.S. 557 (1992), concluding that "enhancement for contingency [was] not permitted under the fee-shifting statutes at issue." Id. at 567. Justice Scalia, writing for the majority, reasoned that enhancement for contingency "would likely duplicate in substantial part factors already subsumed in the lodestar," id. at 562, and would "make the setting of fees more complex and arbitrary." Id. at 566. Dague also rejected the "relevant market" factor approach articulated by Justice O'Connor in Delaware Valley, summarily concluding that it did "not see how it can intelligibly be applied." Id. at 563.

In 1999, without referencing <u>Dague</u>, this Court decided <u>Bell</u>, reaffirming our precedent that contingency fee multipliers can be applied even when the sole basis for the fees is the parties' contract (as opposed to a statute), "so long as the evidence supports the need."  <u>See Bell</u>, 734 So. 2d at 406.  <u>Bell</u> explained the primary rationale for the contingency fee multiplier:

> [I]t assists parties with legitimate causes of action or defenses in obtaining competent legal representation even if they are unable to pay an attorney on an hourly basis.  In this way, the availability of the multiplier levels the playing field between parties with unequal abilities to secure legal representation.

<u>Id.</u> at 411.  <u>Bell</u> also reaffirmed the holding of <u>Quanstrom</u>:

> A court may consider applying a multiplier as a "useful tool" in determining a reasonable fee if the evidence in the record establishes that: (1) the relevant market requires a contingency multiplier to obtain competent counsel; (2) the attorney was unable to mitigate the risk of nonpayment in any other way; and (3) use of a multiplier is justified based on factors such as the amount of risk involved, the results obtained, and the type of fee arrangement between attorney and client.

<u>Id.</u> at 412 (citing <u>Quanstrom</u>, 555 So. 2d at 834).

Although <u>Bell</u> makes no mention of <u>Dague</u>, the Court in <u>Bell</u> clearly indicated this Court's continued commitment to allowing the use of contingency fee multipliers cases where appropriate.  Thus, <u>Bell</u> evidences this Court's separation from federal precedent in this area.  This Court chose to continue to allow the use of multipliers, noting their usefulness in helping parties secure legal

- 18 -

representation and their importance in ensuring access to courts. Bell, 734 So. 2d at 411.

A few years after Bell, in 2003, this Court decided, in Sarkis v. Allstate Insurance Co., 863 So. 2d 210 (Fla. 2003), that the use of a multiplier is not appropriate in determining attorney's fees under section 768.79, Florida Statutes (2002)—the offer of judgment statute.[3] Sarkis held that the fees authorized by section 768.79 are sanctions that attach to the rejection of a reasonable offer, not to the underlying cause of action, and went on to note as follows:

> [T]he use of a multiplier must be consistent with the purpose of the fee-authorizing statute or rule. Quanstrom, 555 So. 2d at 834; see also [Bell, 734 So. 2d at 408-09]. The reason for an award of attorney fees authorized as a sanction for the rejection of an offer to settle is very different from the reason that we authorized the use of a multiplier in Quanstrom, 555 So. 2d at 833, and Rowe, 472 So. 2d at 1151. In those cases, we authorized the use of a multiplier to promote access to courts by encouraging lawyers to undertake representation at the

---

3. Following Sarkis and Dague, in 2004, in Holiday v. Nationwide Mutual Fire Insurance, 864 So. 2d 1215 (Fla. 5th DCA 2004), the Fifth District Court of Appeal certified the following question, in an attempt to clarify the effect of the United States Supreme Court's holding in Dague on this Court's jurisprudence:

> IN LIGHT OF THE SUPREME COURT'S DECISION IN SARKIS, MAY A MULTIPLIER BE APPLIED TO ENHANCE AN AWARD OF ATTORNEY'S FEES GRANTED UNDER A FEE-SHIFTING STATUTE SUCH AS SECTION 627.428, FLORIDA STATUTES (2002).

Id. at 1221. However, this Court ultimately discharged jurisdiction in the case after briefing was completed. Nationwide Mut. Fire Ins. v. Holiday, 924 So. 2d 809 (Fla. 2005).

inception of certain cases.  See Doyle-Vallery[ v. Aranibar], 838 So. 2d [1198, 1198-99 (Fla. 2d DCA 2003)] (Altenbernd, J., concurring).

Id. at 222.

Thus, Sarkis clearly distinguished section 768.79, Florida Statutes, while reaffirming the reasons for authorizing the use of the contingency fee multiplier articulated in Rowe, Quanstrom, and Bell.  Nothing in Sarkis suggests that section 627.428 was to be viewed prospectively as a sanction against insurers in the same way that Sarkis viewed section 768.79 as a sanction.

Whereas the Supreme Court expressly reexamined Delaware Valley in Dague, the Supreme Court implicitly reexamined Blanchard in Perdue, 559 U.S. at 542—another public policy enforcement case involving the calculation of an attorney's fee under 42 U.S.C. § 1988 for civil rights violations.  Perdue did not involve a contingency fee multiplier.  Rather, Perdue involved a lodestar enhancement "due to superior performance and results."  559 U.S. at 546.  In rejecting the lower court's increase of the lodestar (in a case involving seemingly remarkable results obtained by the plaintiffs' attorneys), the Supreme Court observed:

> But as we have also said in prior cases, there is a strong presumption that the lodestar is sufficient; factors subsumed in the lodestar calculation cannot be used as a ground for increasing an award above the lodestar; and a party seeking fees has the burden of identifying a factor that the lodestar does not adequately take into account and proving with specificity that an enhanced fee is justified.

- 20 -

Id. While Perdue did not completely close the door on lodestar enhancements under federal law, Perdue clarified that Dague had indeed closed the door on any enhancements based on contingency risk. Id. at 558 ("And the [lower] court's reliance on the contingency of the outcome contravenes our holding in Dague.").

We now turn to the Fifth District's application of the above precedent in Joyce. In Joyce, the Fifth District quoted Alvarez, 175 So. 3d at 357-58, which cited Perdue for the proposition that "[t]he application of a multiplier is the exception, not the rule . . . and this presumption is overcome only in 'rare' and 'exceptional' circumstances." Joyce, 179 So. 3d at 494. The Fifth District's reliance on Perdue (via Alvarez) misses the point that Perdue addressed lodestar enhancements in contexts other than contingency fee multipliers.

After reviewing this Court's precedent regarding contingency fee multipliers, it is clear that this Court has never limited the use of contingency fee multipliers to only "rare" and "exceptional" circumstances. In fact, in Bell, this Court emphasized the importance of contingency fee multipliers to those in need of legal counsel and made clear that trial courts could consider contingency fee multipliers any time the requirements for a multiplier were met. Bell, 734 So. 2d at 412 (citing Quanstrom, 555 So. 2d at 834). This Court stated that the purpose of section 627.428 is to "discourage insurance companies from contesting valid

- 21 -

claims, and to reimburse insureds for their attorney's fees incurred when they must enforce in court their contract with the insurance company." Id. at 410 n.10. Thus, it is clear that the Fifth District misapplied our precedent in Rowe, Quanstrom, and Bell.[4]

To the extent that Respondents and their amici ask us to eliminate the contingency fee multiplier in all but the "rare" and "exceptional" case where attorney's fees are awarded, we decline to adopt the reasoning of the United States Supreme Court in Perdue and Dague. First, this Court is not bound, in interpreting state statutes or prevailing party attorney's fees in contracts, by United States Supreme Court precedent interpreting awards of attorney's fees in federal statutes.

Second, with all due deference to the United States Supreme Court, we do not accept the Dague majority's rationale for rejecting contingency fee multipliers. Justice Scalia, writing for the majority in Dague, couched his disapproval of contingency fee multipliers by reasoning that the multipliers incentivize nonmeritorious claims, so that those claims are effectively raised as often as meritorious claims:

> [T]he consequence of awarding contingency enhancement to take account of this "merits" factor would be to provide attorneys with the same incentive to bring relatively meritless claims as relatively

_____

4. In 2012, the Legislature amended the language of Florida's Personal Injury Protection ("PIP") laws to specifically prohibit the use of a contingency fee multiplier in calculating reasonable attorney's fees to be awarded to a prevailing insured in a PIP dispute. See ch. 2012-197, Laws of Fla.

meritorious ones. Assume, for example, two claims, one with underlying merit of 20%, the other of 80%. Absent any contingency enhancement, a contingent-fee attorney would prefer to take the latter, since he is four times more likely to be paid. But with a contingency enhancement, this preference will disappear: the enhancement for the 20% claim would be a multiplier of 5 (100/20), which is quadruple the 1.25 multiplier (100/80) that would attach to the 80% claim. Thus, enhancement for the contingency risk posed by each case would encourage meritorious claims to be brought, but only at the social cost of indiscriminately encouraging nonmeritorious claims to be brought as well. We think that an unlikely objective of the "reasonable fees" provisions. "These statutes were not designed as a form of economic relief to improve the financial lot of lawyers." [Pa. v. De. Valley Citizens' Council for Clean Air], 478 U.S. [546, 565 (1986)].

Dague, 505 U.S. at 563.

To the contrary, the contingency fee multiplier provides trial courts with the flexibility to ensure that lawyers, who take a difficult case on a contingency fee basis, are adequately compensated. We also do not agree that the contingency fee multiplier encourages "nonmeritorious claims" and would, instead, posit that solely because a case is "difficult" or "complicated" does not mean that the case is nonmeritorious. Indeed, without the option of a contingency fee multiplier, those with difficult and complicated cases will likely be unable or find it difficult to obtain counsel willing to represent them. As we stated in Bell, the primary rationale for the contingency fee multiplier is to assist:

parties with legitimate causes of action or defenses in obtaining competent legal representation even if they are unable to pay an attorney on an hourly basis. In this way, the availability of the multiplier levels the playing field between parties with unequal abilities to secure legal representation.

Bell, 734 So. 2d at 411. As Justice O'Connor stated in dissent in Dague, "in certain circumstances a 'reasonable' attorney's fee should not be computed by the purely retrospective lodestar figure, but also must incorporate a reasonable incentive to an attorney to take the case in the first place." 505 U.S. at 575 (O'Connor, J., dissenting).

The point being, the lodestar amount, which awards an attorney for the work performed on the case, is properly analyzed through the hindsight of the actual outcome of the case, whereas the contingency fee multiplier, which is intended to incentivize the attorney to take a potentially difficult or complex case, is properly analyzed through the same lens as the attorney when making the decision to take the case. We disagree that the possibility of receiving a contingency fee multiplier leads to a "windfall." See dissenting op. at 18-19. While the attorney for the insurer charges and receives an hourly rate regardless of whether the defense is successful, the insured's attorney bears the risk of never being compensated for the number of hours spent litigating the case. This risk, among other factors, is what entitles the attorney to seek, and the trial court to consider, the application of a contingency fee multiplier.

Moreover the dissent's attempts to use the anecdotal experience of the increased number of PIP claims resulting from the Legislature's elimination of contingency fee multipliers to justify the rejection of a contingency fee multiplier

in this case is unpersuasive.  See dissenting op. at 10-11.  First, in many cases, an attorney's representation in the PIP claim is adjunct to the attorney's representation in the main automobile accident dispute.  Second, in a PIP claim, generally, the sole issue is whether a medical bill was reasonable and necessary and whether the treatment was related to the accident.  Thirdly, the fact that there are attorneys who specialize in PIP claims, which can be handled with relative ease in a volume practice, does not correlate with the availability of competent attorneys who are willing to litigate other types of insurance coverage cases, where generally more complex issues are raised.  In any event, it was the Legislature—not this Court—that decided to prohibit the use of contingency fee multipliers in PIP cases.

We also reject Justice Scalia's reasoning in Dague that enhancement for contingency "would likely duplicate in substantial part factors already subsumed in the lodestar."  505 U.S. at 562.  Although the lodestar amount takes into account a variety of factors, significantly, it does not include a consideration of whether the relevant market requires a contingency fee multiplier to obtain competent counsel.  Importantly, this factor requires the court to consider whether the attorney's client would have been able to obtain counsel absent the availability of a contingency fee multiplier.  Further, we conclude that there is no support in state courts, and indeed none has been offered, that the availability of contingency fee multipliers "make the setting of fees more complex and arbitrary."  Id. at 566.  In conclusion, we

- 25 -

reaffirm our precedent in <u>Rowe</u>, <u>Quanstrom</u>, and <u>Bell</u> regarding the approach that trial courts should take in calculating reasonable attorney's fees and determining whether a contingency fee multiplier is warranted.

We next turn to an examination of this case.

**This Case**

The Fifth District held that the trial court erred in determining that the Joyces' attorney should be awarded a contingency fee multiplier. The Fifth District stated:

> This was not a complicated case. Either the Joyces had falsified their insurance application, or Federated had made an error. There were no esoteric legal issues or complicated factual disputes to resolve. As one would anticipate given today's legal market, there was no evidence the Joyces had any difficulty obtaining counsel to handle this matter. Indeed, it took only one phone call for the Joyces to secure counsel.

<u>Joyce</u>, 179 So. 3d at 494. The Joyces contend that the Fifth District also erred in looking at their actual experience in the market rather than looking at the relevant market itself, as required by <u>Quanstrom</u> and <u>Bell</u>. We agree.

The Fifth District's holding directly contradicts the trial court's conclusion, which was based on the evidence presented at the evidentiary hearing:

> The Court further finds that these cases are difficult, the issues involved were complex, involving policy interpretation, application of exclusion language, agency law, and other issues. As pointed out by Ms. Markham and Mr. Miles, this was a complex commercial case, with serious consequences to the [Joyces], especially after Federated submitted a proposal for settlement.

- 26 -

Moreover, Federated National continued to dispute the Joyces' claim, even after they knew that the Joyces' had in fact made a full disclosure. Throughout the litigation, Federated National maintained that a signed application for coverage completed by the Joyces did not exist and it only processed paperless applications. During the exchange of interrogatories in the case, Federated National finally revealed that the agent who worked with the Joyces was believed to have the original application the Joyces completed. Following the discovery of the application, Federated National admitted that they would honor the claim, however, it was not until two months later that Federated National finally offered to settle the case. Thus, the trial court's findings, which properly considered the complexity of these types of cases and this case in particular, were not in error.

The dissent would have the trial court analyze the complexity of the case though the benefit of hindsight by looking at the actual outcome of the case. See dissenting op. at 7-8. However, contingency fee multipliers are intended to encourage attorneys to take cases they otherwise might not take.

Moreover, this was not an easy case. The litigation here spanned several months and the Joyces' attorney spent more than 100 hours working on the case— a fact that all parties concede was a reasonable number. Thus, the trial court correctly analyzed the complexity of the case, looking to both the outcome of this case in particular and the complexity of these types of cases.

Additionally, the Fifth District concluded that the trial court improperly found that the relevant market necessitated a contingency fee multiplier. In fact, the evidence presented at the attorney's fees hearing indicated that there were no other attorneys in St. Johns County who specialized in this type of litigation. Further, the Joyces' attorney testified that she took the case with the hope and expectation that if she was successful, the court would apply a contingency fee multiplier, and she would not have taken the case without the possibility of a multiplier because she often fails to recover some or all of the fees owed on these first-party cases. The dissent contends that the trial court should have expanded its analysis into Duval County, where there are "thousands of attorneys." Dissenting op. at 4. Again, the dissent's analysis misses the point of why trial courts are required to analyze the relevant market. This factor is intended to assess, not just whether there are attorneys in any given area, but specifically whether there are attorneys in the relevant market who both have the skills to handle the case effectively and who would have taken the case absent the availability of a contingency fee multiplier.

Based on the testimony presented, the trial court found that the Joyces' attorney is highly qualified. She has been an attorney since 1989 and became licensed in Florida in 1994. She is a certified circuit court mediator by the Florida Supreme Court, as well as approved by the Department of Financial Services to

mediate disputes between homeowners and insurance companies. Her practice focuses in large part on representing homeowners in disputes with their insurance carriers, and she is an experienced attorney in that area. Throughout her career, she has handled over seventy first-party coverage denial cases. Indeed, the trial court found:

> Although the Joyces did not seek any other counsel prior to retaining [their attorney], the Court finds based upon the evidence presented, including the testimony of [the Joyces' attorney] and [attorney's fees expert], any such search would have been futile as there are few or no other attorneys who undertake this work who have offices in the St. Augustine area. The evidence shows that the plaintiffs would have been unlikely to have found any attorney in the St. Augustine area with a competency in first party [insurance coverage litigation] who would have agreed to take [their case] without the possibility of a contingency fee risk multiplier.

Thus, the trial court, applying the Rowe factors, found that a contingency fee multiplier of 2.0 was appropriate in this case. This conclusion was based on competent, substantial evidence. See Palma, 555 So. 2d at 838. It was error for the Fifth District to conclude otherwise. Therefore, the Fifth District erred not only in applying a "rare" and "exceptional" requirement but also in substituting its judgment on the Rowe factors based on disagreement with the trial court's conclusions based on its findings of fact.

## CONCLUSION

We reaffirm our adherence to the use of contingency fee multipliers in this State and make clear that there is not a "rare" and "exceptional" circumstances

- 29 -

requirement before a contingency fee multiplier can be applied. Accordingly, we quash the decision of the Fifth District below, disapprove of the Third District's decision in <u>Alvarez</u> to the extent it is inconsistent with this opinion, and remand the case to the Fifth District to reinstate the attorney's fees award and judgment and for any other proceedings not inconsistent with this opinion.

It is so ordered.

LABARGA, C.J., and LEWIS, and QUINCE, JJ., concur.
POLSTON, J., concurs in result.
CANADY, J., dissents with an opinion, in which LAWSON, J., concurs.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

CANADY, J., dissenting.

Because competent, substantial evidence does not support the trial court's use of a multiplier in this case, I would approve the result reached by the Fifth District. I agree that the Fifth District misstated this Court's case law regarding the application of the contingency fee multiplier. But because the multiplier was used without sufficient justification under the requirements of our case law, the district court nonetheless reached the correct result in reversing the fee award. The record here does not support the conclusion that the availability of the multiplier was necessary for the insureds to obtain counsel. I therefore dissent from the majority's decision approving use of the multiplier here.

- 30 -

Although a proper application of our case law does not justify the use of the multiplier in this case, the majority's decision—which slides lightly over the insufficiency of the basis advanced for the multiplier here—illustrates the arbitrary results that can flow from application of the contingency fee multiplier. Of course, the problems associated with the contingency fee multiplier have previously been exposed. Twenty-five years ago in City of Burlington v. Dague, 505 U.S. 557 (1992), the United States Supreme Court unequivocally repudiated the use of the contingency fee multiplier. The majority's decision here underscores the need for a full re-examination in a future case of our multiplier jurisprudence in light of the reasoning of Dague.

## I. THE USE OF A MULTIPLIER WAS NOT SUPPORTED BY COMPETENT, SUBSTANTIAL EVIDENCE

There is nothing "competent" or "substantial" about the evidence relied on by the trial court in awarding the multiplier. See State Farm Fire & Cas. Co. v. Palma, 555 So. 2d 836, 838 (Fla. 1990). In order to be competent and substantial, the evidence must "comport[] with logic and reason." Gonci v. Panelfab Prod., Inc., 179 So. 2d 856, 858 (Fla. 1965). Because the testimony of petitioners' attorney and petitioners' fee expert does not form a logical and reasonable foundation upon which to conclude—as the trial court did—that a multiplier was required, the Fifth District properly reversed the trial court's use of the multiplier.

See Federated Nat'l Ins. Co. v. Joyce, 179 So. 3d 492, 494 (Fla. 5th DCA 2015). The trial court's decision to award a multiplier is seriously flawed.

This Court has repeatedly emphasized the importance of proper justification for the imposition of the multiplier. Beginning in Florida Patient's Compensation Fund v. Rowe, 472 So. 2d 1145, 1151 (Fla. 1985), this Court explained that if a trial court adjusts the calculated lodestar amount to account for "a 'contingency risk' factor," the trial court "must state the grounds on which it justifies the enhancement."[5] In Standard Guaranty Insurance Co. v. Quanstrom, 555 So. 2d 828, 834 (Fla. 1990), this Court made clear that if a trial judge uses a multiplier, there must be evidence "presented to justify the utilization of [the] multiplier." And in Bell v. U.S.B. Acquisition Co., 734 So. 2d 403, 406 (Fla. 1999), this Court once again noted that contingency fee multipliers can be applied, "so long as the evidence supports the need."

Here, the trial court relied, in part, on certain testimony from petitioners' attorney and fee expert that both were unaware of any other attorneys in all of St. Johns County that "specialized" in representing first-party plaintiffs against their insurance companies on coverage issues. Petitioners' attorney and fee expert also

_____

5. In Rowe, this Court "adopt[ed] the federal lodestar approach for computing reasonable attorney fees." Rowe, 472 So. 2d at 1146. The lodestar approach involves calculating the "lodestar" amount by multiplying the number of attorney hours reasonably expended by a reasonable hourly rate. Id. at 1150-51.

both testified that this was a complex commercial case. Petitioners' fee expert further testified that a contingency fee multiplier was necessary to obtain competent counsel, based on the expert's having "interviewed attorneys that accept claims against insurance companies where coverage has been denied."[6] And petitioners' attorney testified that she took the case with the "hope and expectation" that, should she "succeed for [petitioners]," the court would award a multiplier. Based on this testimony, the trial court determined that this was a "difficult" case and "the issues involved were complex, involving policy interpretation, application of exclusion language, agency law, and other issues." And the trial court concluded that "there are few or no other attorneys who undertake this work who have offices in the St. Augustine area" and that petitioners would likely not have found a competent attorney in that area who would have agreed to take the case "without the possibility of a contingency fee multiplier."

As an initial matter, it is unclear why the trial court chose attorneys with offices in St. Augustine as the "relevant market" for purposes of Quanstrom.[7]

---

6. Petitioners' fee expert apparently spoke with four attorneys in the St. Johns County community and with an undisclosed number of attorneys from Jacksonville.

7. In Quanstrom, this Court established three factors to be considered by trial courts in determining the necessity of a multiplier in cases involving tort and contract claims, including insurance coverage disputes. Quanstrom, 555 So. 2d at

While petitioners' attorney has an office in St. Augustine and testified that the relevant market should be St. Augustine, petitioners' own fee expert testified that the relevant market was all of St. Johns County, and respondent's fee expert testified that the relevant market includes Duval County—given that he and many other attorneys based in Duval County also practice in St. Johns County. Moreover, respondent's fee expert testified that there are "thousands" of lawyers in Jacksonville, and petitioners' attorney admitted that she is unaware of how many attorneys in Duval County would take first-party insurance claims. The trial judge chose to focus on attorneys "who have offices in the St. Augustine area" and did so without any reasoned explanation. The trial court's decision cannot be reconciled with Quanstrom, which adopted a "relevant market" factor, not a "local market" factor. See Quanstrom, 555 So. 2d at 834. If the City of St. Augustine somehow only has one attorney who handles these insurance disputes and yet the neighboring county is home to thousands of attorneys, then that neighboring county should obviously be part of any "relevant market" analysis. The trial court's unexplained decision here is grossly inadequate. By reinstating the trial court's award of a multiplier in this case, the majority is essentially holding that the

---

834. The first factor is "whether the relevant market requires a contingency fee multiplier to obtain competent counsel." Id. Quanstrom did not define the nature and scope of this "relevant market" factor.

- 34 -

"relevant market" is whatever the trial court says it is. The majority should instead recognize that the "relevant market" factor must take into account the fact that the market for delivering legal services is dynamic and is not subject to narrow geographic restrictions. It is not rational to limit the "relevant market" in this case to attorneys who have offices in St. Augustine.[8]

In addition, awarding a multiplier based, even in part, on testimony that petitioners' attorney may be the only attorney in St. Johns County who "specialized" in first-party coverage denials is problematic, for several reasons. As an initial matter, even assuming that petitioners' attorney is the only such specialist, Quanstrom refers to a person's ability "to obtain competent counsel," not "specialized" counsel. Quanstrom, 555 So. 2d at 834 (emphasis added). Petitioners' attorney's specialization is irrelevant for purposes of the multiplier in this case. Moreover, awarding a multiplier based on this finding is tantamount to

---

8. In approving the trial court's decision to ignore the thousands of attorneys in Duval County, the majority reasons that the "relevant market" factor considers "not just whether there are attorneys in any given area, but specifically whether there are attorneys in the relevant market who both have the skills to handle the case effectively and who would have taken the case absent the availability of a contingency fee multiplier." Majority op. at 28. In other words, the majority appears to conclude that despite the sea of lawyers in the neighboring county, the Joyces nevertheless would have had difficulty finding a competent attorney in that county who would have been willing to take their case based solely on the lodestar. In my view, that conclusion ignores "today's legal market," Joyce, 179 So. 3d at 494, and is unsupported by competent, substantial evidence in this case.

- 35 -

rewarding an attorney for having a monopoly on a particular geographic market. That hardly jibes with any public policy underlying fee-shifting statutes. See, e.g., Dague, 505 U.S. at 563 ("These statutes were not designed as a form of economic relief to improve the financial lot of lawyers." (citation omitted)). An examination of petitioners' attorney's testimony reveals that she routinely takes first-party insurance disputes and almost never does so on a fixed hourly basis.

The other testimony relied upon by the trial court hardly rises to the level of competent, substantial evidence. For example, petitioners' fee expert indicated that he "prepared e-mails to various attorneys, some in this area and some that were outside of this area." In other words, the trial court relied on testimony that the expert sent e-mails to an undisclosed number of attorneys. Petitioners' fee expert also earlier testified that he had spoken with approximately four attorneys in the St. Johns County community and with an undisclosed number of attorneys from Jacksonville. This Court should hold that this expert testimony is insufficient—as a matter of law—to prove that the relevant market "requires" a fee multiplier.

The trial court also noted that petitioners' fee expert "reviewed numerous orders from this circuit and across the state." But a review of the transcript reveals that the expert reviewed those orders primarily for the purpose of determining a reasonable hourly fee—not the applicability of a multiplier. Moreover, the fee

expert testified that he had not even read all of the orders on which he was relying, and that the orders almost exclusively related to cases outside St. Johns County.[9]

The trial court also relied on testimony from petitioners' attorney and fee expert in concluding that this was a "difficult" case involving numerous "complex" issues. But the record does not support the trial court's conclusion. Rather, the record supports the district court's conclusion that this was a simple, straightforward case. See Joyce, 179 So. 3d at 494 ("This was not a complicated case. Either the Joyces had falsified their insurance application, or Federated had made an error."). Indeed, the evidence shows that Federated agreed to honor the claim immediately after the depositions of the two insurance agents—the only depositions in the case—when it was conclusively determined that the agent did, in fact, have the original paper application showing that the Joyces had disclosed their previous losses.[10]

---

9. The fact that the trial court noted the relevance of these "numerous orders"—almost all of which related to cases outside St. Johns County—further demonstrates the wholly arbitrary nature of the trial court's eventual decision to focus on attorneys who have "offices in the St. Augustine area."

10. In upholding the trial court's conclusions regarding the complexity of this case and the need for the multiplier, the majority here notes that Federated did not "finally offer[] to settle the case" until two months after Federated agreed to honor the claim. Majority op. at 27. But the fact that the insurance company delayed for two months before agreeing on a final settlement with petitioners does not somehow render this a "complex" case. And that delay certainly has no bearing on the issue of "whether the relevant market requires a contingency fee multiplier." Quanstrom, 555 So. 2d at 834. The majority also notes as relevant the

The trial court also noted that petitioners' attorney testified she took the case with the "hope and expectation" that the trial court would award a multiplier. Relying on this testimony, even in part, is illogical, as aptly noted by the Second District in a recent decision:

> Certainly, most (all?) attorneys would <u>prefer</u> to collect twice their market rate at the conclusion of a successful contingency fee case, a point that perhaps needed no expert testimony to illuminate. It does not follow, though, that that preference would create a dearth of competent lawyers who <u>would</u> have taken this case at the prevailing rate. On that critical point, this record is silent.

<u>Florida Peninsula Ins. Co. v. Wagner</u>, 196 So. 3d 419, 422 (Fla. 2d DCA 2016).

Lastly, the evidence does not reasonably support the conclusion that the multiplier is necessary in this case to achieve the specific policy purpose on which this Court previously relied in justifying its use. In <u>Bell</u>, this Court identified the primary rationale for the multiplier as follows:

> [I]t assists parties with legitimate causes of action or defenses in obtaining competent legal representation even if they are unable to pay an attorney on an hourly basis. In this way, the availability of the multiplier levels the playing field between parties with unequal abilities to secure legal representation.

---

fact that "the Joyces' attorney spent more than 100 hours working on the case." Majority op. at 27. But again, that fact does not somehow render this a "complex" case. Moreover, a review of the Joyces' attorney's timesheet reveals that nearly fifty hours of that time was spent after Federated agreed to honor the claim.

Bell, 734 So. 2d at 411. The majority here quotes that same excerpt from Bell. See majority op. at 18. But as explained next, it very much appears that "the playing field" is already "level[]," Bell, 734 So. 2d at 411, without the need for a contingency fee multiplier, at least with respect to insurance dispute cases. The district court below recognized as much, noting: "As one would anticipate given today's legal market, there was no evidence the Joyces had any difficulty obtaining counsel to handle this matter. Indeed, it took only one phone call for the Joyces to secure counsel." Joyce, 179 So. 3d at 494. The district court did not err in stating the obvious.

The homeowners' insurance dispute in this case involves the calculation of fees under section 627.428, Florida Statutes, which allows a prevailing insured in an insurance dispute to recover reasonable attorney's fees from the insurer.[11] Insurance disputes under Florida's no-fault personal injury protection (PIP) laws similarly involve section 627.428.[12] Indeed, Quanstrom was a PIP case involving

---

11. Section 627.428 authorizes an award of fees to a prevailing insured but does not authorize an award of fees to a prevailing insurer.

12. Under Florida's PIP laws, motorists are generally required to carry at least $10,000 in PIP coverage. See generally §§ 627.730-627.7405, Fla. Stat. (2017) ("Florida Motor Vehicle No-Fault Law"). Florida's PIP laws also contain an attorney's fees provision, see § 627.736(8), Fla. Stat., which allows a successful insured to recover attorney's fees from the insurer pursuant to section 627.428, Florida Statutes, subject to certain limitations.

section 627.428, as was <u>Palma</u>, a case decided by this Court on the same day as <u>Quanstrom</u>. In both cases, this Court recognized the availability of the multiplier.

In 2012, the Legislature revised Florida's PIP laws by passing HB 119—Motor Vehicle Personal Injury Protection Insurance. <u>See</u> ch. 2012-197, Laws of Fla. As codified in section 627.736(8), Florida Statutes, this legislative change included an amendment specifically prohibiting the use of a contingency fee multiplier in calculating reasonable attorney's fees to be awarded to a prevailing insured in a PIP dispute. <u>See</u> ch. 2012-197, § 10, at 30-31, Laws of Fla. Not surprisingly, the post-2012 unavailability of a multiplier in PIP cases has not had any negative effect on insureds' ability to obtain counsel in PIP cases—cases which by their very nature generally involve disputed claims of less than $10,000. In fact, this Court recently noted that PIP cases appear to have become even <u>more</u> prevalent in recent years. <u>See</u> <u>In re Certification of Need for Additional Judges</u>, 206 So. 3d 22, 33 (Fla. 2016). And in the instant case, petitioners' own fee expert acknowledged the obvious on cross-examination—that nowhere in the State of Florida is there a "paucity of attorneys" willing to take PIP cases:

> Q. But in the PIP cases, you would agree that where attorney's fees is awarded, the amount of controversy is by definition generally $10,000 or less?
>
> A. Generally I would say yes it is.

Q. All right. And is there any paucity of attorneys that you're aware of in the state of Florida with regard to representation of clients who have PIP claims?

A. Well, I hate to say this, but I'm going to say it. No, there's not.

Given that Florida's 2012 PIP amendments have had no negative effect on PIP insureds' ability to obtain counsel in PIP cases despite the absence of the availability of a contingency fee multiplier in those cases, it is apparent that the playing field is already "level[]," Bell, 734 So. 2d at 411, without the need for a multiplier. Attorneys are abundantly motivated to take PIP cases based solely on the opportunity to earn the lodestar amount under section 627.428, Florida Statutes. Given the undisputed availability of legal representation in PIP cases notwithstanding the bar on use of the multiplier, there is no reason to believe that attorneys in homeowners' insurance disputes are somehow only motivated because a possible multiplier is also involved. The undisputed experience under the PIP statute dictates that a multiplier is not, in fact, "required" in homeowners' insurance cases. The district court below properly refused to ignore this reality.

In short, the reasoning of Bell cannot justify the continued application of the multiplier in insurance dispute cases involving the calculation of "reasonable" attorney's fees under section 627.428, Florida Statutes. And the majority offers no alternative reasons to justify the continued application of the multiplier in these cases. Despite the fact that petitioners' attorney may be highly qualified, no public

- 41 -

policy supports the windfall being awarded to her in this case. Indeed, it is hardly surprising that petitioners' attorney testified that she "knew going in this was a [section] 627.428 case" and that taking the case on a contingency fee basis presented her with "an opportunity to make a big fee if [she] should succeed." (Emphasis added.)

To sum up, the majority here upholds the award of a 2.0 multiplier in a case in which: (1) the plaintiffs' fee expert testified that he contacted an undisclosed number of attorneys who said they would not have taken the case without at least the possibility of a multiplier; (2) that same fee expert begrudgingly "hate[d]" to admit that plaintiffs' attorneys throughout the entire State of Florida are abundantly motivated to take PIP cases (even though PIP cases contain no possibility of a multiplier); (3) that same fee expert presented no explanation of how and why the economics of the market for legal representation in homeowners' insurance cases are fundamentally different from the market for PIP cases; (4) the plaintiff's own attorney testified that she has no idea how many attorneys in the neighboring county—which is home to thousands of attorneys—would have taken this case in the absence of a multiplier; (5) the plaintiffs needed only one phone call to secure counsel; and (6) none of the "difficult" and "complex" issues purportedly inherent in this case played out during the course of the dispute. To affirm the award of a multiplier in this case—let alone a multiplier of 2.0—is to set the bar as low as

possible for the imposition of the multiplier.  This Court should instead

acknowledge that the trial court's findings are fundamentally flawed and the

evidence presented in this case does not "comport[] with logic and reason."  Gonci,

179 So. 2d at 858.

## II.  THE MAJORITY'S DECISION HERE POINTS TO THE NEED FOR RE-EXAMINATION OF OUR MULTIPLIER JURISPRUDENCE IN LIGHT OF DAGUE

Twenty-five years ago in Dague, the United States Supreme Court

definitively re-addressed the applicability of the multiplier under federal fee-

shifting statutes after having previously left the issue unresolved in Pennsylvania v.

Delaware Valley Citizens' Council for Clean Air, 483 U.S. 711 (1987).  See

Dague, 505 U.S. at 559 ("[T]he question is essentially identical to the one we

addressed, but did not resolve, in [Delaware Valley].").  The six-Justice majority in

Dague unequivocally repudiated the use of the multiplier, with Justice Scalia

cogently explaining the Court's reasons for doing so.  The majority here declines

to "accept the Dague majority's rationale for rejecting contingency fee

multipliers."  Majority op. at 22.  In doing so, the majority fails to recognize how

its decision in this case perfectly illustrates all of the reasons why Dague

categorically rejected the multiplier.

Dague began by noting that any risk enhancement to the lodestar would

inherently "double count[]," Dague, 505 U.S. at 563, by "likely duplicat[ing] in

- 43 -

substantial part factors already subsumed in the lodestar," id. at 562. Dague

reasoned that the risk of loss in any given case always involves, among other

things, "the difficulty of establishing [the legal and factual] merits" in the case, and

that this factor will be "ordinarily reflected in the lodestar—either in the higher

number of hours expended to overcome the difficulty, or in the higher hourly rate

of the attorney skilled and experienced enough to do so."[13] Id. at 562. Here, that

"duplicat[ion]," id., is apparent on the face of the trial court's reasoning. For

example, in awarding the multiplier, the trial court noted that "these cases are

difficult" and "the issues involved were complex, involving policy interpretation,

application of exclusion language, agency law, and other issues." As indicated

above, none of these purportedly "complex" issues played out during the course of

this case, in which the insurer conceded coverage after the very first deposition in

the case. But even assuming that this case somehow involved complex and

difficult issues, Dague explained that "the difficulty of establishing [the legal and

factual] merits" in a particular case is a factor that will be "ordinarily reflected in

the lodestar." Id. Indeed, this Court itself has previously made clear that the

difficulty of the case and the complexity of the issues are properly considered in

---

13. Dague further concluded that awarding a multiplier based on the riskiness of any particular case would "provide attorneys with the same incentive to bring relatively meritless claims as relatively meritorious ones." Dague, 505 U.S. at 563.

the first half of the lodestar calculation—the reasonable number of hours. See

Bell, 734 So. 2d at 407 ("[W]e stated [in Rowe] that 'the novelty and difficulty of

the question involved' should be considered in determining the number of hours

reasonably expended on the litigation."); Rowe, 472 So. 2d at 1150 ("The 'novelty

and difficulty of the question involved' should normally be reflected by the

number of hours reasonably expended on the litigation."). Double counting results

from relying on those very same factors in awarding a multiplier. See Delaware

Valley, 483 U.S. at 731 (O'Connor, J., concurring in part and concurring in the

judgment) (agreeing with the plurality that it was improper to employ a risk

multiplier based on the "novelty and difficulty of the issues presented," given that

those "are factors adequately reflected in the lodestar").

After rejecting the notion of awarding a multiplier based on the riskiness of

any specific case, Dague next rejected the notion of a class-wide approach to the

multiplier. Specifically, Dague rejected the market-centric version of the "relevant

market" factor proposed by Justice O'Connor in her Delaware Valley

concurrence.[14] Dague, 505 U.S. at 563-65. Dague reasoned that it was impractical

---

14. In Delaware Valley, the Supreme Court's plurality noted that "there should be evidence in the record, and the trial court should so find, that without risk enhancement plaintiff would have faced substantial difficulties in finding counsel in the local or other relevant market." Delaware Valley, 483 U.S. at 731. Justice O'Connor "agree[d] with the plurality" on that point, id. at 733 (O'Connor, J., concurring in part and concurring in the judgment), but she argued that "compensation for contingency must be based on the difference in market

to adopt a class-wide market approach that prohibited the "assessment of the 'riskiness' of any particular case," given that the "predominant reason that a contingent-fee claimant has difficulty finding counsel in any legal market . . . is that attorneys view his case as too risky."[15] Id. at 564. Dague ultimately concluded that such an approach could not "intelligibly be applied." Id. at 563. Here, the majority reaffirms the "relevant market" factor while seemingly adopting a market-centric approach, see majority op. at 26 ("The Joyces contend that the Fifth District also erred in looking at their actual experience in the market rather than looking at the relevant market itself, as required by Quanstrom and Bell. We agree."), and while simultaneously noting the relevance of and upholding "the trial court's findings" regarding "the complexity of these types of cases and this case in particular," majority op. at 27 (emphasis added). And in doing so, the majority provides no definition of the nature and scope of the "relevant market" factor. The absence of a meaningful definition—either in the majority opinion in this case or in this Court's decision in Quanstrom—lends support to the Supreme Court's

---

treatment of contingent fee cases as a class, rather than on an assessment of the 'riskiness' of any particular case," id. at 731 (O'Connor, J., concurring in part and concurring in the judgment).

15. Dague also rejected a class-wide market approach on the basis that it "cannot possibly achieve the supposed goal of mirroring market incentives." Dague, 505 U.S. at 564.

conclusion that the factor, in fact, cannot "intelligibly be applied." Dague, 505 U.S. at 563.

Dague next reasoned that allowing contingency enhancement under fee-shifting statutes that authorize a reasonable fee would impermissibly permit attorneys to offset losses from other cases and thus "pay for the attorney's time (or anticipated time) in cases where his client does not prevail." Id. at 565. Here, the majority specifically notes that petitioners' attorney testified that "she would not have taken the case without the possibility of a multiplier because she often fails to recover some or all of the fees owed on these first-party cases." Majority op. at 28. Thus, the majority reaffirms the use of the multiplier based, in part, on the notion that the multiplier helps to offset losses from other cases. In doing so, the majority effectively reads section 627.428, Florida Statutes, which expressly permits the recovery of a "reasonable" fee, as somehow authorizing the award of an excessive fee in a case simply because the attorney in that case may be unsuccessful in some other case or cases. But the plain language of section 627.428 does not contemplate what may or may not have happened in other cases. Rather, section 627.428 simply allows for the award of "a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had." § 627.428(1), Fla. Stat. (emphasis added).

Dague next noted that the Supreme Court had been generally rejecting the contingent-fee model in favor of the lodestar model, "even though the lodestar model often (perhaps, generally) results in a larger fee award than the contingent-fee model."[16]  Dague, 505 U.S. at 565-66.  And Dague concluded that contingency enhancement to the lodestar would produce an undesirable "hybrid scheme that resorts to the contingent-fee model to increase a fee award but not to reduce it." Id. at 566.  This case perfectly demonstrates that undesirable hybrid scheme.  Here, petitioners' attorney testified that the amount in controversy was approximately $15,000 and that the parties eventually agreed on a recovery amount of $23,500, exclusive of attorney's fees.  The trial court ultimately determined that a reasonable lodestar amount was $38,150.  So the lodestar obviously exceeded—by many multiples—any contingent fee payable on that recovery.  The trial court then applied a contingency enhancement of 2.0, doubling the attorney's fee award to $76,300.  Thus, even though "[c]ontingency enhancement is a feature inherent in the contingent-fee model," id., calculating "reasonable" attorney's fees in this fashion ignores the contingent-fee agreement for all purposes except for the purpose of increasing the lodestar amount.  And that approach will "often (perhaps,

---

16.  In so noting, Dague recognized that the "lodestar method may 'give lawyers incentives to run up hours unnecessarily, which can lead to overcompensation.' "  Dague, 505 U.S. at 566 (quoting Report of the Federal Courts Study Committee 104 (Apr. 2, 1990)).

generally),” id., end up resulting in a fee windfall for the attorney—as is very much the case here. Indeed, it is hardly surprising that petitioners' attorney testified regarding the lure of "mak[ing] a big fee," even though section 627.428, Florida Statutes, only authorizes a "reasonable" fee.

Lastly, Dague pointed to the "ready administrability" of the lodestar approach, concluding that "[c]ontingency enhancement would make the setting of fees more complex and arbitrary, hence more unpredictable, and hence more litigable."[17] Id. at 566. Here, the majority concludes that "there is no support in state courts, and indeed none has been offered, that the availability of contingency fee multipliers 'make[s] the setting of fees more complex and arbitrary.' " Majority op. at 25 (quoting Dague, 505 U.S. at 566). But one need look no further than the instant case to find support for the Supreme Court's conclusion. For example, as explained previously, the trial court's decision to limit the "relevant market" in this case to attorneys who have "offices in the St. Augustine area" could not be any more arbitrary. And the majority's decision to uphold a multiplier of 2.0 in this simple, straightforward case which lacks competent, substantial evidence will hardly make the setting of fees less "unpredictable" or "litigable." Dague, 505 U.S. at 566.

_____

17. Dague also noted that "[i]t is neither necessary nor even possible for application of the fee-shifting statutes to mimic the intricacies of the fee-paying market in every respect." Dague, 505 U.S. at 566-67.

- 49 -

## III. CONCLUSION

I therefore would affirm the Fifth District's decision to reject the trial court's award of a contingency fee multiplier. Competent, substantial evidence does not "justify," Quanstrom, 555 So. 2d at 834, the trial court's use of a multiplier in this simple case involving section 627.428, Florida Statutes. The majority's decision to uphold the fee award in this case embodies all of the flaws identified by the Supreme Court in Dague regarding use of the multiplier. The majority's decision points unmistakably to the need for a full re-examination of this Court's multiplier jurisprudence. I dissent.

LAWSON, J., concurs.

Application for Review of the Decision of the District Court of Appeal – Direct Conflict of Decisions

    Fifth District - Case No. 5D15-1210

    (St. Johns County)

Tracy L. Markham of Avolio & Hanlon, P.C., St. Augustine, Florida; and Raymond T. Elligett, Jr., and Amy S. Farrior of Buell & Elligett, P.A., Tampa, Florida,

    for Petitioners

Derek J. Angell and Nicholas J. Mari of O'Connor & O'Connor, LLC, Winter Park, Florida; and A. Hinda Klein of Conroy Simberg, P.A., Hollywood, Florida,

    for Respondent